14 So.2d 536

**WILKEY et al. v. STATE ex rel. SMITH.**

**6 Div. 970.**

Supreme Court of Alabama.

May 13, 1943.

Rehearing denied June 30, 1943.

James A. Simpson and Lange, Simpson, Brantley & Robinson, all of Birmingham, and Pennington & Tweedy, of Jasper, for appellants.

Marvin Woodall and Francis Hare, both of Birmingham, for appellees.

**572**

& Swann, of Gadsden, Huey, Welch & Stone, of Bessemer, McCorvey, McLeod, Turner & Rogers, of Mobile, and Powell, Goldstein, Frazer & Murphy, of Atlanta, Ga., amici curiae.

LAWSON, Justice.

This is an appeal from a judgment rendered in the court below wherein the appellants were adjudged guilty of practicing law without a license, as required by law, and wherein appellants were prohibited from continuing the practice of law until regularly licensed to so practice in accordance with the laws of this state.

The original petition in this cause was filed on August 21, 1937, in the name of the State of Alabama on the relation of Jim C. Smith and Jim C. Smith against J. L. Wilkey and J. L. Wilkey, Adjuster, Inc., charging that the respondents were engaged in the practice of law without a license. To the original petition, as amended, the respondents filed numerous pleas, among them the general issue and a special plea wherein was set out the practice and procedure usually followed by the respondents in conducting the business of an insurance adjuster. The trial court sustained a demurrer to the plea of the general issue and also to the said special plea. This court in the case of Wilkey v. State, 238 Ala. 121, 189 So. 198, reversed the trial court, holding that it erred in sustaining the demurrer to the plea of the general issue, but concluding that the demurrer to the special plea was correctly sustained. On the second trial in the court below, the trial court gave the general affirmative charge for the complainant after the opening statement of the respondents' counsel. This court again reversed and remanded the cause on the ground that where the respondents plead the general issue and do not waive jury trial, and the opening statement of their counsel raises no issue which is immaterial or against public policy, a directed verdict based on such opening statement is improper as denying the right to trial by jury. Wilkey v. State, 238 Ala. 595, 192 So. 588, 129 A.L.R. 549. The present appeal, therefore, is the third in this case.

The relator alleged in the petition that he was a duly licensed practicing attorney, residing and practicing law in Birmingham, Jefferson County, Alabama, and that at the time of the filing of the petition was

J. S. Mead, Benners, Burr, McKamy & Forman, Frontis H. Moore, and Maurice F. Bishop, all of Birmingham, Dortch, Allen

president of the Birmingham Bar Association.

The petition charges that J. L. Wilkey, Adjuster, Inc., a corporation, was organized on the 2nd day of January, 1932, in Jefferson County, Alabama, and has its principal office or place of business in said city of Birmingham, Jefferson County, Alabama, and that said corporation was still in existence and in operation at the time of the filing of the petition; that the respondent J. L. Wilkey, Adjuster, Inc., a corporation, from the time of its creation has been managed, controlled and practically owned by the individual respondent J. L. Wilkey; that J. L. Wilkey and J. L. Wilkey, Adjuster, Inc., a corporation, are intruding into the profession of the practice of the law in Jefferson County, Alabama, and elsewhere in this state in that they are and have been since 1932 unlawfully practicing law without having obtained the license as required by the laws of this state.

The relief sought in the petition is: (1) That the respondents be commanded to show by what warrant or authority they, separately and severally, are and have been intruding into the profession and practicing said profession of law in Birmingham, Jefferson County, Alabama, and elsewhere in the state; (2) that upon final hearing the respondents separately and severally be excluded or be prohibited from practicing law in this state until such time when they or either of them may become legally licensed to practice law in the State of Alabama.

The respondents by pleas 1 and 2 set up the general issue or denial of the allegations of the petition.

After the completion of the testimony, the trial court gave the general affirmative charge with hypothesis for the complainant, which charge was duly requested in writing. The jury returned a verdict in accordance with said charge, in favor of the complainant and against the respondents.

The judgment rendered by the court below is in substance as follows:

"* * * And it further appearing to the Court that plaintiffs are entitled to such appropriate relief as is germane to the general nature and purposes of this proceeding in the proper administration of justice and for the general welfare of this State:

"Now, therefore, it is ordered, adjudged and decreed by the court that the said defendants, J. L Wilkey and J. L. Wilkey, Adjuster, Inc., a corporation, are now and have been continuously since, to wit: in January, 1932, unlawfully intruding into the profession of the practice of law in Jefferson County, Alabama, and elsewhere in this State, and unlawfully practice law in Jefferson County, Alabama, and elsewhere in this State, including the settling, adjusting or compromising of controverted or disputed claims or demands between persons with neither of whom they are in privity or in the relation of employer and employee in the ordinary sense, which is a profession requiring a license or certificate, or other legal authorization within this State, without having obtained such license or certificate or other legal authorization within this State.

"It is further ordered and adjudged by the Court that the defendants, J. L. Wilkey, Inc., a corporation, their officers, agents, servants or employees, be and they are each, separately and severally, hereby excluded from and prohibited from practicing law in the State of Alabama, including the settling, adjusting or compromising of controverted or disputed claims or demands between persons with neither of whom they are in privity or in the relation of employer and employee in the ordinary sense, until such time when they or either of them, respectively may become licensed to practice law in the State of Alabama."

The primary purpose of this litigation as we view it is to have this court determine whether or not there is a field of operation under the laws of this state for the independent insurance adjuster and, if so, to draw a line of demarcation between those acts which constitute the practice of law and those acts connected with the usual course of conduct of such a business which do not amount to the practice of law.

The petition or information in this case does not include any averments of specific acts on the part of respondents which it is contended constitute the practice of law. We have held that such is not necessary, but that allegations, such as are in this case, which charge in general terms that a respondent has intruded into the practice of the profession without a license as required by law, are sufficient.

Donovan v. State ex rel. Biggs, 215 Ala. 53, 55, 109 So. 290. The testimony tends to show the practice and procedure customarily followed by respondents in the conduct of business of an independent insurance adjuster. It includes many phases and several different activities which appellee contends constitute the practice of law. If it appears by direct, positive and undisputed evidence that respondents have engaged in any activities in the conduct of the business of an insurance adjuster which constitutes the practice of law, then the trial court correctly gave the general affirmative charge with hypothesis, as requested by complainant, even though there may be a conflict in the evidence as to some phases of respondents' activities or if certain of the other activities of respondents do not constitute the practice of law.

However, in the interest of clarity and because of the importance of the questions presented to all parties concerned, including the public, we deem it wise to discuss the various activities of respondents as disclosed by the record and to express our opinion as to whether or not they constitute the practice of law.

The facts as are necessary to an understanding of this controversy may be summarized as follows:

J. L. Wilkey is a resident of the City of Birmingham. His business or vocation is that of an independent insurance adjuster of claims for various companies. He has been so engaged in such vocation since 1928. This type of work was carried on by him as an individual until 1932, when J. L. Wilkey, Adjuster, Inc., a corporation, was organized. Wilkey is the owner of twenty-three of the twenty-five shares of stock, is president and treasurer of the corporation and has exercised complete control and supervision over its activities and policies. The objects for which the corporation was formed as here pertinent are stated in the incorporation declaration to be: (a) To engage in the business of enforcing, securing, settling, adjusting and compromising defaulted, controverted, disputed and denied accounts, claims or demands of every kind, acting solely for persons, firms and corporations with whom said J. L. Wilkey, Adjuster, Inc., is in privity, one or both or more, or with whom one or both or more said J. L. Wilkey, Adjuster, Inc., sustains the legal relation of employer and employee in the

ordinary sense; (b) the corporation shall have no power to practice law nor act as an attorney. Offices are maintained in the cities of Birmingham, Anniston and Decatur. Neither Wilkey nor anyone else connected with the corporation at the time this case was tried below is licensed to engage in the practice of law in this state, although formerly one of the adjusters was so licensed.

For a number of years the respondent J. L. Wilkey, Adjuster, Inc., has advertised in insurance periodicals as being engaged in the business of investigating and adjusting claims made against insurance companies. The respondents have adjusted many claims made against numerous insurance companies and their assureds. They have not represented claimants trying to collect from insurance companies or individuals. Respondents are not paid a salary by any of the insurance companies which they represent, but are compensated for their services on an hourly and mileage basis. The offices are maintained at the expense of the corporation respondent. All clerical help and employees are employed by the said corporation and the respondent Wilkey is paid a salary by the respondent corporation for his services. Respondents have paid for a number of years the license required by both the State of Alabama and the City of Birmingham for engaging in the business of an insurance adjuster. Prior to the time that this suit was instituted respondents followed the practice of appearing as agents for insurance companies in having consent judgments entered against such companies where suit was brought by next friend in behalf of minors. This practice, however, does not appear to have been followed by respondents since 1936 and they expressly disavowed any intention of resuming such practice.

The evidence shows that respondents rendered services to insurance companies in connection with the following types of claims: Workmen's compensation cases; fire losses; automobile collision (where claim was filed by insured for damage or injury to his automobile as result of collision); automobile liability insurance (where claim was filed by third person based on personal injury or damage to automobile as result of alleged negligence of company's assured).

The record is not in all respects clear as to the procedure and practice custom-

arily followed by respondents in investigating, adjusting and settling claims. The scope of respondents' activity and authority seems to have depended on the type of claim investigated and in some instances it is not clear as to which type of claim the evidence as to the procedure and practice employed by respondents related.

As we interpret the testimony, the procedure and practice usually followed by respondents in investigating, adjusting and settling claims, may be summarized as follows:

(a) Workmen's compensation claims. The respondents were usually notified of the fact that an employee had filed a claim by the local agent of the insurance company or by the employer covered by such insurance. Where the claim was based on minor injuries, the respondents did not make an investigation of the facts incident to the injury, but merely notified the insurance company of the fact that claims had been filed. If notified by the company that the claim should be paid, the respondents drew a draft on the company to cover the amount of the claim. In instances where there was any question as to whether the employee had actually been injured or if the employee had lost time from his job as a result of the injury, the respondents investigated the facts and made a report thereof to the insurance company. Payment was made to the injured employee only upon express authorization or direction of the insurance company. The record contains only one specific reference to a workmen's compensation claim handled by the respondents. In that instance it appears that respondents were local adjusters for the Standard Accident Insurance Company, which company carried a workmen's compensation policy on an employer at Birmingham. An employee named Harris was injured, made claim against the Standard Accident Insurance Company for workmen's compensation benefits and was paid through respondents' office. When this compensation had been paid out in full, the said insurance company then wrote its attorneys at Birmingham to pick up the file from respondents' office and bring suit against the L. & N. R. R. Co., which company was alleged to have caused the injury, for reimbursement. Respondents delivered the file to the attorneys, who proceeded with the suit for reimbursement. The defendant railroad company called the respondent Wilkey as a witness. He testified on that trial that he had told the injured party how many weeks his injury entitled him to be paid for and what his average weekly wages were. It does not appear, however, whether the information given by Wilkey to Harris was based on his own application of the law to the facts or whether such information was furnished Wilkey by the insurance company.

(b) Fire insurance claims. Respondents investigated the facts incident to the fire losses when requested to do so by the companies and made reports of their findings to the company. Payments were made direct to the policy holder by the company, the respondents not being authorized to draw drafts on such companies.

(c) Automobile collision claims. Claims of this nature were usually forwarded to respondents by agents of insurance companies, but in some instances by the companies. After the claim was forwarded to respondents, they investigated the facts surrounding the accident and obtained from a reliable garage an estimate of the injury or damage to the automobile. This information was sent by respondents to the insurance companies, who usually determined the amount to be paid claimant after taking into consideration any deductible features which may have been included in the policy. It appears, however, that in at least one instance the respondents determined the amount of the payment after taking into consideration the deductible features in the contract of insurance. In some instances respondents notified insurance companies and individuals as to their subrogation rights and had claimants execute lien subrogation papers. Payment was made to claimant by the insurance company.

(d) Liability insurance. Upon receiving notice from a company or its agents of an accident or injury, the respondents obtained as soon as possible complete information regarding the accident, including the nature and extent of any resulting injuries to persons and damage to property. The information obtained by respondents was forwarded to the insurance companies on forms furnished by the companies. The forms when filled out usually contained information as to the name and address of the claimant, the place where the accident occurred, the time of the accident, the type of automobile involved, the name of the

driver, name and address of injured person, extent of injuries, extent of damage to automobile, and other similar information. The report also usually contained the driver's version of the accident, including his opinion as to its cause. The adjusters sometimes agreed with the injured party as to the amount of damages, after securing estimate from physician in case of personal injuries and from a garage in case of injuries to an automobile. In some instances respondents drew drafts on the companies for the amount agreed upon and in others they merely delivered to the payee the check sent to them by the company. In a few instances drafts were drawn by the respondents on the insurance company in payment of claims without being specifically directed to do so by the insurance company. In such cases the amount of the claim was small. When a claim was paid, the respondents had the claimant execute a release. The releases were not drawn by respondents but were furnished by the insurance companies. Each insurance company had a different form of release but in most instances they varied only in minor details. Most of the companies used the same form of release for all types of claims, but at least one had different forms for different claims. Respondents selected from the release forms sent to them the one which in their judgment was applicable to the particular type of claims. The form generally used merely called for the insertion therein of the date and place of the accident and the name of the person who receives the check or draft. Where the claimant did not agree to accept the amount offered by the insurance company, the respondents made additional investigation and reported the results thereof to the companies. If the company did not recede from its original stand after the receipt of the additional information, respondents so notified the claimants. In cases where suit resulted, the company and its local counsel were notified by respondents, who forwarded to local counsel the entire file. The respondents after forwarding the file to the company's local counsel were no longer connected with the matter.

On one occasion it appears that respondents, after the claimant had refused the amount offered him, recommended to the insurance company that the payment be increased. In connection with this same matter the respondent Wilkey advised the claimant that he could not enter suit on behalf of his wife to recover for the losses sustained by her as a result of her absence from work while caring for claimant.

On another occasion after the claimant refused to accept the amount offered, the respondents continued to handle the matter and finally drew a draft on the insurance company for an increased amount in accordance with the company's authorization.

There appear to be three types of insurance adjusters, the "claimant adjuster," the "salaried adjuster," and the "independent adjuster."

The "claimant adjuster" is one who, while he may do the things the appellants do, will also obtain, secure, enforce, or establish a right, claim or demand for an individual against an insurance company. That is, he collects as well as pays. His activity is not as an incident of a legitimate business like insurance, but as an independent vocation. He holds himself out to the public as ready to serve all comers. The authorities are practically unanimous in holding that the method of operation of this type of insurance adjuster constitutes the practice of law. One of the leading cases dealing with this type of adjuster is that of Meunier v. Bernich, La.App., 170 So. 567, wherein it appears that Meunier, the adjuster, undertook not only to investigate the facts and negotiate for a settlement, but he also advised claimants as to the liability of the tort feasor and advised them respecting their rights and liabilities as a matter of law. Meunier also by contract reserved the right to place the claims in the hands of a lawyer of his own choosing in event suit was necessary. This course of procedure seems to have been that followed by the adjuster in all of the cases dealing with this type of adjuster. Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356; Fink et al. v. Peden, 214 Ind. 584, 17 N.E.2d 95; Hightower v. Detroit Edison Co., 262 Mich. 1, 247 N.W. 97, 86 A.L.R. 509.

The "salaried adjuster" is one who performs the same type of service as do the appellants in this case, but is a full time employee of one insurance company or of two or more separate companies writing different lines of insurance, but who operate together as a so-called "group," all contributing pro rata to his salary. Only one case has been called to our attention wherein a court has been

called upon to pass upon the question as to whether or not this type of insurance adjuster in performing the usual functions of such an adjuster is engaged in the practice of law. In Liberty Mutual Insurance Co., et al., v. Jones et al., 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149, the Supreme Court of Missouri held that this type of adjuster was not engaged in the practice of law in investigating and reporting facts, and negotiating settlements for his employer.

The "independent insurance adjuster" differs very little in respect to the activities in which he engages from the salaried insurance adjuster. The two types differ only in their method of employment and the method of their payment. One is hired by one company or a number of companies acting as a "group" and is paid by the month, while the other is hired by several companies acting independently, and is paid by the hour and the mile. The Supreme Court of Wisconsin in the case of State of Wisconsin v. Rice, 236 Wis. 38, 294 N.W. 550, has held that an independent insurance adjuster is not engaged in the practice of the law when investigating and reporting the facts incident to an automobile accident or in negotiating a settlement between the claimant and the insurance company. The Wisconsin case, supra, is the only case from other jurisdictions which has been called to our attention wherein the status of an independent insurance adjuster is discussed.

The appellants, unquestionably, should be classed as "independent insurance adjusters," but the decision here cannot be predicated in all of its phases on the Wisconsin case, supra, for the reason that our statute defining the practice of law is in most respects different from the Wisconsin statute relating thereto.

In 1927 the legislature attempted to amend Section 6248 of the Code of 1923 so as to define the practice of law in this state. This act of the legislature (Act No. 573, H. 490, approved September 7, 1927, General Acts 1927, page 669) was held to be unconstitutional as violative of Section 45 of the Constitution in the case of Kendrick v. State, 218 Ala. 277, 120 So. 142.

In 1931 the legislature reenacted the 1927 act en haec verba (Act No. 493, H. 606, approved July 20, 1931, General Acts 1931, page 606). This latter act was held constitutional in the case of Berk v. State ex rel. Thompson, 225 Ala. 324, 142 So. 832, 837, 84 A.L.R. 740, from which case we quote as follows: "It is well established that the act in question (Gen. Acts 1931, p. 606) is a valid enactment under the police power, and offends neither state nor Federal Constitution; is not usurpation of judicial power; does not deprive of liberty or property without due process; neither denies to citizens equal civil rights, nor grants special privileges and immunities; does not violate, impair, or deny rights retained by the people, and does not violate the Fourteenth Amendment to the Federal Constitution."

The 1931 act, supra, has now been codified as Section 42 of Title 46, Code of 1940, and is as follows: "Who may practice as attorneys.—Only such persons as are regularly licensed have authority to practice law. For the purposes of this article, the practice of law is defined as follows: Whoever, (a) in a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court or a justice of the peace, or a body, board, committee, commission or officer constituted by law or having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the state or any subdivision thereof; or, (b) for a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; or, (c) for a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the prevention or the redress of a wrong or the enforcement or establishment of a right; or, (d) as a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is practicing law. Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands; nor from preparing abstracts of

title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon. Any person, firm or corporation who is not a regularly licensed attorney who does an act defined in this article to be an act of practicing law, is guilty of a misdemeanor, and on conviction must be punished as provided by law. And any person, firm or corporation who conspires with, or aids and abets, another person, firm or corporation in the commission of such misdemeanor must, on conviction, be punished as provided by law."

We will first treat the question as to whether or not the practice and procedure which the record shows the respondents to have followed in adjusting and negotiating settlements for the insurance companies represented by them constitutes the practice of law when done by an independent insurance adjuster, such as respondents, within the meaning of subdivision (d) of Section 42, Title 46, supra.

Appellee strenuously insists that it was definitely determined by this court on a former appeal in this case (Wilkey v. State, 238 Ala. 121, 189 So. 198, 202) that such activity by appellants is forbidden by subdivision (d) of Section 42, Title 46, supra. In that case Mr. Chief Justice Anderson, writing for the court, held that the trial court correctly sustained a demurrer to a special plea filed by respondents wherein was set out the practice and procedure customarily followed by the respondents in the conduct of the business of an insurance adjuster. It was held that the facts alleged in the said special plea showed that appellants were not employees of the insurance companies which they represented "in the ordinary sense" nor in privity with the insurance companies and liability carriers, and, therefore, the activity in which appellants were engaged contravened the statute defining the practice of law.

The special plea which this court treated on a former appeal in this case, and which we held to show that respondents were engaged in the practice of law, was as follows:

"The defendants, and each of them, are employed by several casualty and fire insurance companies and liability carriers and in this employment when one of the said companies by itself or its representative, advises the defendants that an accident or fire has occurred which involves an assured of such company, the defendants, in be-

half and on request of such companies, investigate such accident or fire loss by interviewing witnesses and by taking down in writing statements of said witnesses, by having the physical damages to the person or property of the parties to such accident or fire reported on by physicians or repair men, as the case may be, in order to determine the severity of physical injuries or extent of property damage sustained by the parties involved, from such accidents or fire, which facts are reported by defendants to their said employers and, in those cases where the employers so direct, these defendants endeavor to settle such claims for physical injury or property damage sustained by such parties from such accident or fire by payment of a sum satisfactory to such injured or damaged party or parties, and to the said employers of these defendants; and in all such cases where such settlement cannot be made, then these defendants refer to the legal representatives of their said employers the said facts, statements of witnesses and other information developed by these defendants on such investigation, to be handled by such legal representatives. These defendants further say that the above are the only acts done or business in which these defendants are now engaged or propose to engage in future, and that all of the acts and things so done by these defendants, as above detailed, are all done under the orders and superintendence of the legal department of defendants said employers. These defendants further say that they do not represent plaintiffs or individual claimants, nor seek to do so, but are only employed by companies against which claims are made or may be made growing out of or incident to an accident or fire, as aforesaid.

"The type or kind of business done and the method of conducting their business as herein set out is not only the type, method, manner and course of business employed or engaged in by the defendants and each of them at the time of the institution of this suit, and for a long time, towit more than a year, prior thereto, but is the only type, method, manner and course of business or activity engaged in by defendants or either of them since the filing of this complaint or that they propose or claim the right to engage in at any time in the future. They further aver that during the times herein before stated they and neither of them are employed by or act for any other person, firm or corporation, in any capacity

whatsoever, except said insurance companies above described and that they bear the relation of employee to employer in the ordinary sense as well as the legal sense to each of said insurance companies. The business engaged in by the defendants is known as 'insurance adjuster' and as such is provided for by the revenue laws of the State of Alabama and by the License laws of the City of Birmingham, and the defendants have duly and legally paid to the State of Alabama, the County of Jefferson and the City of Birmingham their licenses to transact the said business carried on by them for the year of 1932 and many years prior thereto and for each year since the year 1932. The defendants are not now, have not within the time hereinbefore stated, and do not claim the right to nor propose in the future to engage in or intrude into the practice of the profession of law in Jefferson County or in the State of Alabama or elsewhere."

The course of conduct of respondents' business as an insurance adjuster as set out in said plea is in some material respects the same as that shown by the undisputed proof in this case in so far as it relates to respondents' activities in connection with the settlement, negotiation or adjustment of claims.

■ We are not here controlled by the decision on the former appeal, in fact we are required by statute to review the case anew without regard to the former decision, but we do not consider the conclusion reached in the former opinion to be in conflict with the view now entertained. Section 28, Title 13, Code of 1940; Birmingham News Co. v. Birmingham Printing Co., 213 Ala. 256, 104 So. 506; Mann v. Darden, 171 Ala. 142, 54 So. 504.

■ We agree with the conclusion there reached that the appellants were not employees of the insurance companies which they represented "in the ordinary sense" nor in privity with such companies and liability carriers.

■ We do not construe the former opinion as holding that all of the activities of respondents as detailed in the said special plea constituted the practice of law. The court on that appeal was passing on a demurrer to the special plea in bar of the charge against respondents. When so, the plea is construed most strongly against the pleader on the assumption that he has stated his defense in the light most favorable to him on the facts. The plea does not allege whether the claims which appellants had been adjusting or settling were "defaulted, controverted or disputed." It must be assumed, therefore, that at least some of them were probably so classed. If so, respondents' conduct in adjusting and settling them was practicing law under subdivision (d), supra. That was probably what the court meant in holding that the plea does not show that he was not engaged in conduct declared by that statute as practicing law.

Section 42, Title 46, supra, requires a license to authorize one to practice law and then defines what constitutes the practice of law.

To obtain a license to practice law, one must either be a graduate of the Law Department of the University of Alabama, or be approved by the Board of Examiners appointed by the Board of Commissioners of the State Bar (Sections 25, 26 and 27, Title 46, Code of 1940).

The legislature of this state, as early as 1897, recognized the fact that the adjustment of losses was an integral part of the insurance business (Act No. 614, S. 295, approved February 18, 1897, General Acts 1897, page 1377). To like effect are the provisions of Sections 79, 80 and 81 of Title 28, Code of 1940.

An insurance agent includes one who "examines or adjusts, or aids in adjusting any loss for or an behalf of any insurance company." Section 79, Title 28, supra. No person shall engage in such business as an adjuster until he shall have complied with the laws governing insurance agents and procured a license as required by law. To procure such a license he must have the qualifications prescribed. Sections 80 and 81, Title 28, supra. An insurance adjuster (agent) before securing a license must submit to the Superintendent of Insurance evidence tending to show that he has had experience or will be instructed as to the insurance business, is possessed of good reputation and has knowledge of the fundamental principles of insurance, insurance business, practices, policy and contract classifications. The State Superintendent of Insurance must be satisfied also that he is "generally familiar with the provisions of the laws of this state relating to insurance."

■ The legislature by the passage of the act defining the practice of law did not, in our opinion, intend to completely prevent the adjustment of insurance losses by inde-

pendent lay adjusters. There is a field of operation for the statutes relating to the practice of law distinct from that relating to the independent lay adjuster.

 Subdivision (d) of Section 42, Title 46, supra, is not confined to insurance disputes but is broad enough to include them and should be so interpreted. But as its language imports, it does not include the adjustment of insurance losses before there is a default, dispute or controversy. Before the situation reaches a point where there is a default, dispute or controversy, the law in our opinion provides for adjustments by independent lay adjusters, duly qualified and licensed as such, who may do whatever is necessary to that end not prohibited by subdivisions (a), (b) and (c) of Section 42, Title 46, supra. But after a default, dispute or controversy has arisen, the independent lay adjuster must step aside, for then the law declares that the further adjustment or litigation must be handled by a regularly licensed lawyer.

The qualifications which a lay insurance adjuster must possess before the State Superintendent of Insurance may issue him a license are sufficient protection both to the claimant and the insurance carrier until a default or controversy arises. Such an adjuster must be familiar with the insurance laws of this state, but not with the wide range of legal learning required of a lawyer necessary to handling any sort of claim or default which is controverted. Before that time arrives, the service of the lay insurance adjuster relates to inquiries of a factual sort alone; such as the causes of fires and accidents and the extent of the loss and negotiations and agreements concerning the same, including securing the execution of a written release. When a dispute arises, it may take a wide range in the realm of the law and be governed by legal principles of a general sort, or it may be easily solved. And so may any disputed controversy. But the law cannot separate and classify those which are disputed, controverted or defaulted into classes, some of which require the legal learning of a lawyer and some do not.

We think it may well be assumed that there are many negotiations and inquiries after a loss by and between insured and the company for which independent lay adjusters are well qualified to perform. That is their specialized field of activity in which they have been found to be duly qualified

to serve. The lawyer must come into an adjustment as soon as a controversy or dispute arises or a default occurs. Any sort of controversy or dispute is the statutory line of demarcation.

We must determine, therefore, as to whether or not the facts in this case show that the appellants have been engaged in enforcing, securing, settling, adjusting or compromising defaulted, controverted or disputed accounts, claims or demands, as distinguished from claims or demands which have not reached the stage of a default, controversy or dispute.

 We are of the opinion that the activity of respondents in investigating and reporting the facts and circumstances relating to a claim filed against an insurance company represented by them was not in contravention of subdivision (d) of Section 42, Title 46, supra, and does not constitute the practice of law. We think that lay insurance adjusters may investigate and report such facts, may take photographs, secure statements from witnesses, secure estimates from physicians as to personal injuries and from experts as to the extent of damage to property and report the same to the insurance companies.

 We find that the conduct of appellants in occasionally adjusting a collision loss where liability is not controverted did not constitute the practice of law, even though it was necessary for appellants to take into consideration the plain, unambiguous deductible features of the policy.

 We see no impropriety in an insurance company authorizing an independent lay adjuster to settle small claims or claims generally regarded by insurance companies as uneconomical to contest, without the specific approval of the company's counsel or its local attorney. If an insurance company, in the interest of economical management, deems it wise to inaugurate and maintain such a policy relative to small claims, we do not consider that the practice of law is involved in such settlements. State of Wisconsin v. Rice, supra.

 The evidence shows that on one or more occasions the appellants, in accordance with instructions received from the insurance company notified the claimant of the amount which the company agreed to pay on the settlement of the claim and after the refusal by the claimant to accept this sum, notified the company of the claimant's

refusal and thereafter negotiated a settlement with claimant at an increased figure. As we construe the evidence, there was no dispute or controversy relative to liability, nor had the situation reached the point where negotiations were no longer possible. This conduct on the part of appellants did not constitute the practice of law within the meaning of the statute.

■ We conclude that the appellants in holding themselves out as being engaged in the business of independent insurance adjuster and listing the business in the classified section of insurance and adjustment journals, did not engage in the practice of law.

■ It is our judgment that the appellants were not engaged in the practice of law in having claimants execute releases on forms furnished appellants by the insurance companies or by their counsel, even though the appellants selected from the forms furnished them the proper form applicable to the settled claim. We do not mean to be understood as holding, however, that an independent lay adjuster may prepare contracts or agreements for the settlement or compromising the claims made against the insurance companies employing him. State of Wisconsin v. Rice, supra.

■ An independent lay insurance adjuster may not advise or recommend that insurance companies have subrogation or contribution claims against other insurance companies or individuals, as such action involves the giving of legal advice and constitutes the practice of law. The evidence shows that one Robinson and one Kelly were involved in an automobile collision. Robinson was covered by collision insurance carried by the Home Insurance Company, represented by appellants. The Home Insurance Company paid the claim filed by Robinson, whereupon respondents notified Kelly and his counsel or counsel for his insurance carrier that the Home Insurance Company had paid the claim and were holding subrogation rights and advised that any settlement made should subrogate the equity of the Home Insurance Company on account of their expenditure. We think this action on the part of appellants constituted the practice of law.

■ The evidence as to respondents' activities in connection with workmen's compensation claims is not in all respects clear. We do not think it sufficient to authorize us to say that it constituted the practice of law. We think it advisable, however, to say that an independent lay insurance adjuster may not express his own opinion to a claimant as to the rights of the claimant under the Workmen's Compensation Act, Code 1940, Tit. 26, § 253 et seq., for such would require a construction of the law on the subject and would constitute the practice of law. However, we do not think that an independent lay adjuster is precluded from conveying to the claimant the legal opinion of counsel for the insurance company as to claimant's rights.

■ We are also of the opinion tthat the action of appellants in advising or recommending to an insurance company that the company increase the amount offered the claimant involved the giving of advice and, in our opinion, constituted the practice of law, since the evidence does not show that such recommendation was limited to appellants' estimate of the amount of the loss.

■ The action of respondents in advising a claimant that he could not legally enter suit against the insurance company which they represented to recover for the loss of earnings suffered by claimant's wife while caring for claimant after he was injured was, in our opinion, clearly in violation of subdivision (b) of Section 42, Title 46, supra. Such action on the part of appellants constituted the practice of law in that counsel or advice was given by appellants as to legal rights of the claimant.

■ We conclude that the appearance by the appellants before the courts for the purpose of having settlements with minors approved by the court constituted the practice of law. Such activity on the part of the appellants conflicts with the provisions of subdivision (a) of Section 42 of Title 46, supra. Even if we had no such statute we would be constrained to hold that such activity amounted to the practice of law. However, there is no evidence in the record which shows that the respondents have followed this practice since the filing of the instant case. In fact, the evidence is clear on the point that such practice has long since been abandoned by the appellant.

Inasmuch as we have concluded that the evidence is clear to the point that some of the activities in which the appellants have been engaged constitute the practice of the law, the conclusion of the lower court must be affirmed.

582

■ We are of the opinion that the complainants were entitled to the general affirmative charge with hypothesis as given by the court below for the reason that the direct and undisputed testimony shows that some of the activities in which the respondents were engaged constituted the practice of the law.

The judgment is affirmed.

Affirmed.

All the Justices concur.

## On Rehearing.

LAWSON, Justice.

On rehearing, appellants insist that we specifically point out whether or not the limitations which in the original opinion are placed on an independent insurance adjuster as to his activities in enforcing, securing, settling, adjusting or compromising defaulted, controverted or disputed accounts, claims or demands are likewise applicable to salaried adjusters. We were not dealing with the activities of the so-called salaried adjuster group in the original opinion and, therefore, did not expressly apply the provisions of subdivision (d) of § 42, Title 46, supra, to their activities. Subdivision (d), § 42, Title 46, supra, is as follows: "§ 42. Who may practice as attorneys.—Only such persons as are regularly licensed have authority to practice law. For the purposes of this article, the practice of law is defined as follows: Whoever, * * * (d) as a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is practicing law."

That section provides that one who adjusts a defaulted, controverted or disputed account, claim or demand between persons with either of whom he is in privity or with whom he stands in the relation of employer and employee in the ordinary sense, is not engaged in the practice of law.

■ Appellants contend, however, that if such a construction be placed on the statute it would deny to them the equal protection of the laws and, therefore, would be unconstitutional. We do not agree with this contention. The rules by which classification for the purpose of legislation must be tested are stated concisely and clearly in the opinion of the United States Supreme Court in Lindsley v. Natural Carbonic Gas Company, 220 U.S. 61, 31 S.Ct. 337, 340, 55 L.Ed. 369, Ann.Cas.1912C, 160, as follows:

"1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids which is done only when it is without any reasonable basis, and therefore, is purely arbitrary.

"2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

"4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

The Supreme Court of Appeals of Virginia in the case of Bryce v. Gillespie, 160 Va. 137, 168 S.E. 653, applied these rules to a statute somewhat similar to the one here under consideration and concluded that the act did not violate the equal protection clause of the 14th Amendment. Though not committing ourselves to the soundness of the opinion of the Virginia court in the Bryce case in its entirety, yet we refer thereto as concurring in the reasoning there employed upon the matter of discrimination. In that view of the matter subdivision (d) of § 42, Title 46, supra, is not unconstitutional as denying to the independent insurance adjuster equal protection of the laws guaranteed to him by the 14th Amendment to the Constitution of the United States.

Application for rehearing overruled.

All the Justices concur.