64 So.2d 70

### LUCAS v. LUCAS.
### 2 Div. 302.

Supreme Court of Alabama.
March 19, 1953.

McQueen & McQueen, Tuscaloosa and Geo. P. White, Centerville, for appellee.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

GOODWYN, Justice.

This is the second appeal in this case. In the first appeal, this court affirmed the decree of the trial court overruling demurrer to the bill of complaint. Lucas v. Lucas, 252 Ala. 626, 42 So.2d 457. The present appeal is from the final decree which granted the relief prayed for and taxed the costs of the proceeding, including compensation allowed the guardian ad litem, against the appellant respondent, Clay M. Lucas.

The bill seeks to have set aside and declared null and void, because of fraud in its procurement, a divorce decree render-

ed by the Circuit Court of Bibb County, Alabama, in Equity, on January 8, 1943, in a proceeding brought by Robert D. Lucas, now deceased, against Mary Belle Lucas, the appellee-complainant here. Robert D. Lucas died on January 9, 1947. The bill here involved was filed on May 13, 1947, in the Bibb County Circuit Court, in Equity, with the heirs at law of said Robert D. Lucas being made parties respondent. Decrees pro confesso were taken against all named respondents who were of age, except Clay M. Lucas, appellant, who is a brother of Robert D. Lucas. A guardian ad litem was appointed to represent those respondents and unknown next of kin and heirs at law of Robert D. Lucas who were minors or non compos mentis.

It is alleged in the bill that the fraud consisted of the following:

"(a) The decree of said Court was void in that the said R. D. Lucas, or Robert D. Lucas, alleged in his bill that the said Mary Belle Lucas voluntarily abandoned said R. D. Lucas or Robert D. Lucas whereas Your Complainant would show that said allegations were entirely false and known by the said R. D. Lucas or Robert D. Lucas to be false in this; that the said Mary Belle Lucas never did nor on any occasion voluntarily or otherwise abandon the said R. D. Lucas or Robert D. Lucas, but on the contrary stood ready at all times to perform her marital duties toward him.

"(b) For that the jurisdiction of the Court was fraudulently invoked in that the said R. D. Lucas or Robert D. Lucas alleged in said Bill that Mary Belle Lucas was a non-resident of the State of Alabama or that the place of her residence was unknown, whereas Your Complainant would show that said allegations were false and known by the said R. D. Lucas or Robert D. Lucas to be false in that Your Complainant was a resident of the State of Alabama residing at Loachapoka, Lee County, Alabama where she has continually resided since July 1937, which fact was well known to the said R. D. Lucas or Robert D. Lucas.

"(c) For that the decree in said cause was fraudulent and void in that the same was rendered upon publication service as for a non-resident respondent or one whose address is unknown, without notice to the respondent thereto, by publication in the Centerville Press, a newspaper published in Bibb County, Alabama, on decree pro confesso, said respondent Mary Belle Lucas, being at that time a resident of the State of Alabama, residing at Loachapoka, Lee County, Alabama, where she had continually resided since July 1937, which facts were well known to the said Robert D. Lucas or R. D. Lucas.

"(d) For that the decree in said cause was fraudulent in that no notice was ever served on Your Complainant notifying her that such divorce proceedings had been begun against her by the said R. D. Lucas or Robert Lucas and that she had no knowledge of said proceeding and was without fault or negligence in suffering the said decree to be rendered.

"(e) For that the decree in said divorce proceedings was fraudulently obtained in that it was alleged in the Affidavit of Non-Residence that defendant in said cause was a non-resident of the State of Alabama or her address was unknown, whereas defendant Mary Belle Lucas was at that time a resident of Lee County, Alabama, which fact was well known to the said R. D. Lucas or Robert D. Lucas."

It is further alleged in the bill, as amended, as follows:

"Your complainant would further show that she has reason to believe that the said Robert D. Lucas, deceased, was the owner of certain real and personal property at the time of his death and on said information and belief does hereby aver that the said Robert D. Lucas, deceased, was the owner of certain real and personal property at the time of his death, but after diligent effort your complainant has been unable to ascertain the exact location, nature or amount of said

property, and your complainant has been unable to determine who is the legal representative of the said Robert D. Lucas, deceased.

"Your complainant would further show that as the lawful widow of the said Robert D. Lucas, deceased, she would be entitled to a cause of action under the Workmen's Compensation Law of Alabama.

"Your complainant would further show that as the lawful widow of the said Robert D. Lucas, deceased, she would be entitled to a cause of action under the Social Security Laws of the United States."

The evidence, taken orally before the trial judge, is, in pertinent substance, as follows: Mary Belle Lucas, appellee-complainant, and Robert D. Lucas were married in Shelby County, Alabama, in 1933. In 1934 they moved to Loachapoka, in Lee County, Alabama. From then until 1940, Robert D. Lucas was in and out of Loachapoka. After July, 1940, Mary Belle Lucas did not see her husband again, but testified that she received letters from him after he left, together with contributions to her maintenance and support. She offered in evidence one such letter, which bore the date of December 24, 1946, and contained seventy-five dollars in cash. Appellant-respondent suggested that the date was not in the same handwriting as the body of the letter, and that the postal mark on the envelope had been so obliterated as to make the date unintelligible. On June 13, 1942, an attorney of Shelby County wrote to appellee at Loachapoka advising her that Robert D. Lucas had employed him to file divorce proceedings against her, and requesting that she let him know whether she would object. She wrote the attorney that she did object. The attorney wrote her again on June 27, 1942, acknowledging receipt of her letter and requesting that she reconsider. Then on July 6, 1942, the attorney again wrote her, advising that her husband was insisting on a divorce, and that he was filing a bill for that purpose in the Circuit Court of Shelby County, Alabama. With the letter there was enclosed a copy of

the bill of complaint, and also an acceptance of service, and waiver and answer, for execution by appellee. These were not executed by appellee. Said bill for divorce alleged that Mary Belle Lucas voluntarily abandoned Robert D. Lucas in Shelby County in October, 1935. What happened to this proceeding is not made clear. On October 23, 1942, Robert D. Lucas filed a bill for divorce against Mary Belle Lucas in the Circuit Court of Bibb County, Alabama, in Equity, to which was attached his affidavit, dated October 19, 1942, reciting that:

> "Mary Belle Lucas * * * is a nonresident of the State of Alabama, or her residence is unknown to the complainant and he, after making diligent inquiry, has been unable to ascertain the same."

A different attorney represented him in this latter proceeding. Service was had by publication in a newspaper published in Bibb County. There was no personal service on Mary Belle Lucas. This bill alleged that said parties:

> "were legally married at Montevallo, in Shelby County, Alabama, in 1933, and lived together as man and wife until 1935, when she voluntarily abandoned complainant."

On January 8, 1943, a decree was rendered by the Bibb County Circuit Court, in Equity, granting the divorce and authorizing R. D. Lucas to marry again after 60 days from the date of the decree. On March 8, 1943, he married Josie Jennett, and they lived together in West Blocton, Bibb County, Alabama, until October 1, 1946. On November 29, 1946, Josie Lucas was granted a divorce by the Bibb County Circuit Court, in Equity, on the ground of cruelty. No child was born of this marriage, nor of the marriage of Robert D. Lucas to Mary Belle Lucas. There is no evidence that he was ever married to anyone else. Robert D. Lucas died on January 9, 1947, as a result of injuries received in an accident. Mary Belle Lucas lived in the State of Alabama continuously after she was married to Robert D. Lucas, and lived in Loachapoka, Lee County, Alabama, continuously after mov-

ing there in 1934. Loachapoka is about 100 miles, and about a two-hour automobile ride, from West Blocton, in Bibb County. Mary Belle Lucas testified that she knew nothing of the divorce proceedings against her, nor of the marriage of Robert D. Lucas to Josie Jennett, until after his death. Although the bill alleges, on information and belief, "that the said Robert D. Lucas, deceased, was the owner of certain real and personal property at the time of his death," there was no evidence offered of such ownership.

■ As is required of us, we have reviewed the case anew on this appeal without regard to the former decision. Code 1940, Title 13, Section 28; Wilkey v. State, 244 Ala. 568, 579, 14 So.2d 536, 151 A.L.R. 765; Birmingham News Co. v. Birmingham Printing Co., 213 Ala. 256, 258, 104 So. 506. We do not find that there is any conflict between our present views as to the law of the case and the conclusions reached in the former opinion. Accordingly, for the purposes of this appeal, we expressly approve the rulings on the law in that opinion, 252 Ala. 626, 42 So.2d 457.

■ It seems quite clear that the primary, if not the only, objective of this suit is to establish appellee as the legal widow of Robert D. Lucas in order that she might effectively prosecute claims as his widow under the Workmen's Compensation Law of Alabama, Code 1940, Tit. 26, § 253 et seq. and the Social Security Laws of the United States. That she, as his widow, is entitled to monetary benefits under those laws is not questioned. In the case of Fox v. Fox, 235 Ala. 338, 340, 179 So. 237, 238, it was held that "a decree of divorce may be attacked for fraud after the death of the party procuring it where rights of property are concerned." For annotation on this point, see 22 A.L.R.2d 1325. We must first determine, then, whether a widow's right to benefits under the aforementioned laws is "a right of property" within the rule. The answer to this is found, we think, in the recent case of Vaughan v. Vaughan, Ala.Sup., 62 So. 2d 466, 472. We there recognized that a widow's right to a federal pension is a property right justifying a suit such as this.

We see no reason why a widow's right to benefits under the aforementioned laws should not likewise justify and support such a suit; and we so hold.

Appellant's theory of defense is that appellee was guilty of laches and should not be permitted, as late as 1947, to question the validity of the divorce decree rendered in 1943; that she must have known about the divorce proceedings against her or, at least, she must have had knowledge of facts which should have put her on notice to inquire into her marital status. As stated by appellant in his brief:

"The complainant (appellee) contends that she acted promptly after she learned of the fact that the divorce had been granted. It must be borne in mind, however, that she did not act at all until the unfortunate death of Mr. Lucas. We, of course, could not adduce any positive testimony to prove that the appellee did know that her husband had obtained a divorce or that he had remarried and for more than three years had lived in West Blocton, Alabama, with his second wife. We do submit, however, that if this schoolteacher wife lived within two-hours drive of her husband for more than three years with him openly and notoriously living with another woman as husband and wife without hearing about their marriage, this is one of the strange happenings in this modern civilization in which we live. It is incredible and unbelievable that news of such an affair would not have reached the ears of this wife during a period of more than three years."

■ Against this suggested inference, however, there is direct evidence by appellee that she had no knowledge of either the divorce proceedings in Bibb County or of Robert D. Lucas's second marriage, until after his death in 1947. Thus there was presented a factual situation which the trial court resolved against appellant. When, as here, testimony is taken ore tenus before the trial court, the established rule is that a finding by such court on the facts has the effect of a jury's verdict and will not be disturbed on appeal unless

plainly and palpably wrong. Meadows v. Hulsey, 246 Ala. 261, 262, 20 So.2d 526; Taylor v. Hoffman, 231 Ala. 39, 40, 163 So. 339. We are unwilling to say that the trial court's decision should be disturbed under the authority of this rule.

We come now to consider appellant's contention that he should not have been taxed with all of the costs. His insistence in this respect is thus stated in his brief:

"It will be noted from the decree that all of the court costs were assessed against the respondent, Clay M. Lucas, including the fee of the guardian ad litem for representing the minor and non compos mentis respondents. It will be noted that there were quite a number of parties respondent named in the bill. Some of the respondents were served personally and some were served by publication. Even some unknown heirs were made parties respondent and a guardian ad litem was appointed to represent these unknown heirs as well as the minor who was named as a party defendant. The only respondent, other than the respondents represented by a guardian ad litem, to contest the matter was Clay M. Lucas. Apparently because Clay M. Lucas did contest the case, the Court assessed him with all of the court costs. There certainly can be no justification for having assessed all of the court costs against this respondent. He was not responsible for the suit having been brought; he had nothing to do with the fact that the other respondents were named in the complaint; he had nothing to do with having them served with process and nothing whatsoever to do with any part of the court costs incurred by having made these parties respondents to the bill."

██ The taxation of costs in equity proceedings is governed by Equity Rule 112, Code 1940, Title 7, Appendix, which, in pertinent part, is as follows:

"Costs will be imposed by the court or judge having jurisdiction at such times during the litigation as he deems proper, subject to correction for improper exercise of his discretion, and may be apportioned by him between the parties; * * *."

In referring to Equity Rule 112, supra, it was stated in Dozier v. Payne, 244 Ala. 476, 477, 14 So.2d 376, 377, as follows:

"This rule needs no elaboration. It follows the long established rule in equity vesting in the chancellor a discretion in the taxation of costs; but, says the rule, 'subject to correction for improper exercise of his discretion.' An 'improper' exercise of discretion appears when the record, after indulging all fair intendments in favor of the ruling, discloses the taxation of costs was unjust and unfair. Otherwise the action of the trial court should not be disturbed.

"The general rule at law, usually followed in equity, is to award the costs in favor of and not against the successful party in the suit. As a rule this is just. Apportionment of costs may be just in many instances dependent upon the particular case. * * *"

See, also, the later case of Thompson v. Bryant, 251 Ala. 566, 569, 38 So.2d 590, 593, wherein it is stated as follows:

"In equity the matter of costs rests largely in the discretion of the chancellor."

Considering the case before us in the light of the foregoing pronouncements, we are unwilling to say that there was an improper exercise of discretion by the trial court in the taxation of the costs. Although we recognize the persuasiveness of appellant's argument that the complainant, appellee here, should be taxed with a part of the costs, we are not convinced that the trial court's decree, after indulging all fair intendments in its favor, should be disturbed.

The decree is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and BROWN and SIMPSON, JJ., concur.