Frances D. MOEWES, Appellant (Defendant and Third-Party Plaintiff), J.D.C., Inc. (Defendant),

v.

FARMER'S INSURANCE GROUP and Fire Insurance Exchange, Los Angeles, California, Appellees (Third-Party Defendants),

v.

AMERICAN APPLIANCE COMPANY (Plaintiff).

No. 5580.

Supreme Court of Wyoming.

March 4, 1982.

Stephen L. Simonton, Simonton & Simonton, Cody, signed the brief and appeared in oral argument on behalf of appellant.

Ross D. Copenhaver, Powell, and Tracy J. Copenhaver, Legal Intern, Copenhaver & Kahl, Powell, signed the brief on behalf of appellees. Ross Copenhaver, Powell, appeared in oral argument.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Summary judgment was granted by the district judge in favor of the third-party

---

defendant-appellee (Exchange). The defendant, third-party plaintiff-appellant (Moewes) sets out the issue on appeal:

"Under the circumstances of this case, did Appellee (Third-Party Defendant below) owe a duty of care, assumed or contractual to Appellant (Third-Party Plaintiff below) to warn her as to the consequences of the contractor's failure to pay materialmen and suppliers or to otherwise protect her from mechanics' liens?"

Exchange presents as the issue for this court a slightly revised version:

"Did Appellant (Third-Party Plaintiff below) by her claim raise any material issues of fact which would indicate that Appellees (Third-Party Defendants below) owed a duty of care, assumed or contractual to warn Appellant as to the consequences of the contractor's failure to pay materialmen and suppliers or to otherwise protect her from mechanic's liens?" .

We will affirm.

Moewes purchased from Exchange an insurance policy to cover various risks of damage to her home, including loss by fire. She suffered a loss by fire in her kitchen caused by overheated grease. Exchange's area adjuster on the day following the conflagration met with Moewes, surveyed the damage, and requested her to obtain bids from various contractors for repair of the residence. J.D.C., Inc. was the low bidder. The adjuster informed her that he had no authority to authorize a contractor to proceed with repairs and that she would have to authorize the selected contractor to proceed; this, she did.

When Exchange's adjuster settled the loss, the check to Moewes also carried the name of J.D.C., Inc., the contractor, as payee. The contractor did not pay a supplier, the plaintiff in this action to foreclose its claimed materialman's lien. Other suppliers, as well, were not paid. The materialman, plaintiff in this action, is not a party to this appeal. Moewes paid off some of the other materialmen as a result of the failure of the contractor to pay. The check delivered to the contractor also included money Moewes was to receive for her painting of the smoke-damaged walls.

It is the claim of Moewes that Exchange's adjuster took charge of the repair and handled all the financial arrangements, and Exchange is therefore responsible for payment of the lien claims. She further asserts that she relied upon the expertise and knowledge of the adjuster, followed his instructions, directions and advice and relied upon him to counsel and assist in the fire loss; and he, on behalf of Exchange, negligently failed to advise her of any need for obtaining lien waivers or releases from the suppliers of materials to the contractor. It is her further claim that the policy of insurance provides for payment of the insurance proceeds to the insured but that the check was not only made payable to her but also the contractor.

As disclosed by depositions in the record, it is the policy of Exchange to place the contractor's name on drafts in payment for repairs arising from fire loss to insure that the work is completed and the mortgagee's interest protected. (The mortgagee of the property was not a party to this action.) A Mr. Axness, a professional insurance adjuster, testified by deposition that the contractor's name is usually placed on an insurance settlement check, "[b]ecause it's to keep a good working relationship with these contractors," but there is no legal obligation to do so. The insured, however, must authorize the contractor to proceed with the repairs. There is no affidavit or other material in the record that contradicts the evidence that this was the practice or custom in the business of adjusting insurance claims.

Deposition testimony further disclosed that the progress of work is followed by adjusters because, during repairs, other damage not originally figured for might be or perhaps there is discovered even less damage than originally estimated. There is no practice or custom in the insurance adjusting business of obtaining lien waivers from anyone. No evidence was introduced contradicting that claim.

The foregoing narrative from depositions in the record preliminarily acquaints us with the problem and the claim of Moewes. The factual situation as reflected from the record will be developed somewhat further during the course of this opinion.

It must be kept in mind that procedurally this case was disposed of at the district court level through summary judgment, so we must recognize the basic principles of that process in our disposition. In *Reno Livestock Corporation v. Sun Oil Company,* Wyo., 638 P.2d 147 (1981), we capsulized the holdings of a long string of cases into a consolidated rule:

" * * * When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record. We separate the formal and pretended from the genuine and substantial so only the latter may be considered in eliminating the burden of a formal trial if only questions of law are left to decide; there must be no issue of material fact to decide. [Citation.] A material fact, expressed in various ways, is one having legal significance which would in a given case control the legal relations of the parties; one upon which the outcome of the litigation depends in whole or in part; one on which the controversy may be determined; one which will affect the result or outcome of the case depending upon its resolution; or one which constitutes a part of the plaintiff's cause of action or the defendant's defense. [Cita-

tion.] Summary judgment affords an opportunity for prompt disposition of a lawsuit in its early stages, permitting an end to unfounded claims and avoiding the expense of a full-fledged trial to both litigants and the state's judicial machinery. [Citation.]" 638 P.2d at 150–151.

Are there any material issues of fact in this case within the rule which ought to be tried? We can see none. Facts set out in this paragraph are undisputed. There was a fire in the residence of Moewes, insured by Exchange. A report of loss was made to the local agent of Exchange, who in turn arranged for an adjuster to settle the loss. The adjuster appeared promptly, examined the scene, requested Moewes to obtain bids, which she did. The adjuster advised her to select the contractor, which she did. The adjuster informed her that she must contact the contractor and direct it to proceed because he had no authority to do so. She did that. Since some of her appliances were not fully covered, at the suggestion of the adjuster, she worked out an arrangement with the contractor whereby she would do the painting and the contractor would pay in full for the new appliances. She selected the appliances and instructed the dealer to charge them to the contractor. She selected the cabinets and instructed the dealer to charge them to the contractor. She selected the new floor covering and instructed the dealer to charge it to the contractor. When it appeared the work was near completion, the adjuster for Exchange came around to Moewes and, in the presence of J.D.C.'s principal officer, the loss figure was settled. Upon departure of the contractor's representative, the adjuster presented to Moewes a draft for the cost made payable to her, her divorced husband still on the policy as an insured, and the contractor, and advised her not to deliver the draft to the contractor until she was satisfied that he should be paid. After obtaining her former husband's signature, two or three days later, she signed and delivered the draft to the contractor, who cashed the draft and disappeared without paying some of the materialmen. She was then stuck with their claims, some of which she paid.

It is Moewes' claim that the adjuster "took charge" and therefore placed Exchange in the role of a fiduciary with the duty of informing her that she should, before paying the contractor, obtain materialman lien waivers or require the contractor to produce evidence of payment or lien waivers from materialmen. In Moewes' affidavit resisting the motion for summary judgment, she concluded from the facts:

> "That I believe that Mr. Cole, as agent for Farmer's Insurance Group and the Fire Insurance Exchange had a legal duty to protect me from any claims of third parties as were asserted by American Appliance and other persons. If the law is not to that affect [sic], I believe that Mr. Cole in fact did assume the duty of protecting me from such claims by his actions and that I had a right to rely on his representations that I would be taken care of in a proper manner."

■ A party may not rely on conclusions nor can they be employed by a court in disposing of a motion for summary judgment. *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239 (1976). Under the contract of insurance between Moewes and Exchange:

> "Loss, if any, shall be adjusted with the named insured and shall be payable to him unless other payee is specifically named hereunder."

Under the undisputed facts as stated, the draft for the contractor's bill was made payable to Moewes, though it carried the name of the contractor. When the draft was delivered to her, she, under the contract of insurance, assumed complete control of funds paid her by Exchange. The terms of the contract are clear and unambiguous. In such case, it needs no construction and its interpretation is appropriate for disposition by summary judgment. *Cline v. Safeco Insurance Companies*, Wyo., 614 P.2d 1335 (1980); *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming*, Wyo., 612 P.2d 463 (1980). There was an adjustment of loss and payment to the insured.

■ The only question, then, is whether on the basis of the undisputed facts some sort of duty in Exchange arose to obligate it to be liable for the failure of the contractor to pay materialmen. Moewes claims that the conduct of the adjuster created a "good Samaritan" situation in that having undertaken to advise Moewes on how to get the repair done, he had a duty to see that she was protected from materialmen's liens by advising her to get their waivers or proof of payment before turning over the settlement check to the contractor.

Moewes admits that she can find no authority in point but does cite *Morgan v. Pennsylvania General Insurance Company*, 87 Wis.2d 723, 275 N.W.2d 660 (1979), as an analogy. In that case, a driver negligently drove his car onto plaintiff's land and into a group of trees damaging the trees and lawn to the extent of $3,000. The motorist, his insurer, and its adjuster were sued. The plaintiff claimed that the adjuster "directed" him to drive stakes into the ground adjacent to the damaged trees to brace them. While personally doing so, the plaintiff allegedly suffered a hernia and the trees died. The trial court dismissed plaintiff's claim for physical injury as unreasonable under the circumstances. The trial judge further decided that at the most the adjuster's direction was advisory and the plaintiff physician acquainted with his own physical condition could not be personally ordered to do his own work. The appellate court reversed on the ground that a full factual presentation was necessary in that the complaint was not explicit as to what the insurance adjuster allegedly did.

The Morgan case is somewhat different and distinguishable from the posture of the case now before us. Here, we have a full factual presentation through depositions and an affidavit of the plaintiff on a motion for summary judgment. We know exactly what the adjuster did through the testimony of the plaintiff herself which was not inconsistent in any material way with the testimony of the adjuster. Her contention that the facts created a duty similar to that

created in a good Samaritan[1] is without merit. That is strictly her own conclusion unsupported by the material and undisputed facts. We are unable to associate a good Samaritan with an insurance adjuster. He was not a volunteer performing a gratuitous service. He was adjusting an insurance claim in accordance with the contract of insurance with Moewes.

The trial judge in his consideration of the motion for summary judgment pointed out the similarity of this case to *Daniels v. Big Horn Federal Savings and Loan Association*, Wyo., 604 P.2d 1046 (1980). There it was held that a lender was under no obligation to protect against liens when distributing construction loan proceeds where customary practices did not include obtaining lien waivers from subcontractors and materialmen before disbursement to the contractor. In that case this court noted that the evidence was to the effect that it was unusual for a Wyoming lender to obtain lien waivers before the project was completed. In the case now before us, the uncontradicted evidence is that adjusters never do any more than join the contractor on the payment of loss draft to the insured and obtain no lien waivers from materialmen.

█ Duty is a question of law to be determined by the court. *Distad v. Cubin*, Wyo., 633 P.2d 167 (1981). This court also there defined duty and actor. "Duty" denotes the fact that an actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause. The word "actor" designates the person whose conduct is in question as subjecting him to liability toward another.

An interesting question is raised as a result of our research as to whether the giving of legal advice such as that which Moewes insists Exchange's adjuster should have given would have constituted the unlawful practice of law. There is no showing of any sort in the record that the adjuster was a member of the Wyoming State Bar. Section 26-9-108, W.S.1977, defines an adjuster:

"(a) An 'adjuster' is an individual who, for compensation as an independent contractor, or as the employee of such independent contractor, or as a salaried employee of an insurer, or for fee or commission, on behalf of the insurer investigates and negotiates settlement of claims arising under insurance contracts.

"(b) A licensed attorney-at-law who is qualified to practice law in this state, or a licensed agent or broker who adjusts or assists in adjustment of losses arising under policies issued through such broker or by the insurer represented by such agent, is not deemed to be an adjuster for the purpose of this chapter."

Provision for licensing of adjusters appears in § 26-9-143, W.S.1977. Even if he had been a member of the Wyoming State Bar, he would have been representing Exchange and such representation would be in conflict with the interests of Moewes, which he could not ethically represent.

It has been held that lay adjusters may not prepare contracts or agreements for the settlement or compromising of claims made against insurance companies employing them nor give an opinion construing the law under a statute since that would be practicing law contrary to statute. *Wilkey v. State ex rel. Smith*, 244 Ala. 568, 14 So.2d 536, 151 A.L.R. 765 (1943), cert. denied 320 U.S. 787, 64 S.Ct. 195, 88 L.Ed. 473, anno-

---

1. Appellant quotes from texts:

"One who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking was a purely voluntary undertaking or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or un-

dertaking sufficient to support an action ex contractu based thereon." 65 C.J.S. Negligence, § 4(4).

"* * * The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies. * * *" 57 Am. Jur.2d Negligence, § 45.

tated 151 A.L.R. 781, 796. In *Liberty Mutual Insurance Company v. Jones*, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149 (1939), annotated in 125 A.L.R. 1173, at 1182, it was said that an insurance adjuster should not state or act upon his own opinion as to the legal rights of the insured. Steps taken against the unauthorized practice of law are not primarily for the protection of attorneys but for the protection of the public from potential injury resulting from reliance on laymen for the performance of acts requiring the training, knowledge, and responsibility of a licensed attorney. *Herman v. Prudence Mutual Casualty Company*, 41 Ill.2d 468, 244 N.E.2d 809 (1969).

We, therefore, find an underlying reason why the adjuster would not authorize the contractor to proceed but required Moewes to do that. He was ignorant about materialmen's liens and not in a position to give Moewes any advice in that regard; and, if he had, he might have unlawfully engaged in the practice of law.

In *White v. Hartford Casualty Company*, La.App., 297 So.2d 744 (1974), it was held that a lay adjuster has no duty to advise claimants of the law, citing *Green v. Grain Dealers Mutual Insurance Company*, La. App., 144 So.2d 685 (1962), where it was said a simple inquiry to a Louisiana lawyer would have avoided the difficulty. In the case now before us, it is undisputed that Moewes and the adjuster were equally ignorant of the law of materialmen's liens. There was certainly no evidence that Moewes was deliberately or even, as the basis for an action, constructively lulled into any sense of security. In *Smith v. City of Dallas*, Tex.Civ.App., 425 S.W.2d 467 (1968) it was held an adjuster was under no duty in adjusting a claim to interpret for the claimant a notice provision of the city charter, of which he was not even aware, or even advise claimant to employ an attorney; his duty was to investigate and attempt to settle claims for the insurance company. That is all that the insurance adjuster here was doing.

We conclude and hold that an adjuster for an insurance company, under the cir-

cumstances of this case, is under no duty to give an insured the legal advice she claims should have been given.

Affirmed.