Wilson F. GORDON

v.

CROWN CENTRAL PETROLEUM CORPORATION.

No. C76–635A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 11, 1976.

Peyton S. Hawes, Jr. and Robert S. Jones, Cofer, Beauchamp & Hawes, Atlanta, Ga., for plaintiff.

Alton H. Hopkins, Huie, Ware, Sterne, Brown & Ide, Atlanta, Ga., Morton A. Sacks and James J. Dawson, Cable, McDaniel, Bowie & Bond, Baltimore, Md., for defendant.

## ORDER

MOYE, District Judge.

This is an action under section 1 of the Sherman Act, 15 U.S.C. § 1, sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and the Georgia Gasoline Marketing Practices Act, Ga. Code Ann. § 106–1101 *et seq.* Plaintiff seeks damages for the wrongful termination by defendant Crown Central Petroleum Corp. (Crown) of a Branded Service Station Lease and Dealer Agreement (Agreement) entered into by the parties on November 25, 1973. The case is presently before the Court for determination on the merits and on Crown's motion to require plaintiff to post bond pending disposition on the merits. Crown's motion to require plaintiff to post bond is now moot and is hereby ORDERED DENIED.

The controversy in this case centers on plaintiff's alleged failure to abide by paragraph 2(b) of the Agreement between Gordon and Crown which requires that plaintiff's Crown service station at 927 Clay

Street, Marietta, Georgia (hereinafter referred to as SE–19) remain open for service 24 hours a day, seven days each week. After several discussions and waivers of the requirement due to the 1973 gas shortage and construction adjacent to SE–19, the plaintiff was informed on December 8, 1975, that his franchise would be terminated if he thereafter failed to comply with the 24-hour requirement. Allegedly the plaintiff did not comply with the requirement in January and February of 1976, and on February 25, 1976, plaintiff was notified that his Agreement would be terminated effective May 4, 1976, because of his failure to operate the station on a 24-hour basis. The natural expiration date of plaintiff's Agreement was May 24, 1976. Gordon served notice to Crown after receipt of the termination letter that he would hold over after May 4, 1976; he then filed the instant suit, as a result of which a preliminary injunction enjoining termination has been in force since September 21, 1976.

Plaintiff alleges that termination was illegal for the following reasons:

(1) Crown failed to present sufficient cause for termination under the Georgia Gasoline Marketing Practices Act, Ga. Code Ann. § 106–1101 et seq.;

(2) the provision requiring 24-hour operation is illegal under the Sherman Act as a restraint on competition; and

(3) the provision requiring 24-hour operation is an unconscionable provision of a contract of adhesion.

The defendant contends the following:

(1) Failure to abide by the 24-hour requirement presented sufficient cause for termination; even if sufficient cause was not shown, the plaintiff received the required notice for termination at the end of the Agreement period under the Gasoline Marketing Practices Act; and

(2) The 24-hour provision of the Agreement does not violate the Sherman Antitrust Act inasmuch as the requirement promotes and enhances competition and serves the public convenience.

The Georgia Gasoline Marketing Practices Act, Ga. Code Ann. § 106–1104, provides as follows:

It shall be a violation of this Chapter for any gasoline distributor who has a marketing agreement with a gasoline dealer, directly or indirectly, through any officer, agent or employee, to commit any of the following acts:

(a) to terminate or cancel such marketing agreement without good cause prior to the expiration date;

(b) to terminate or cancel an existing marketing agreement prior to expiration date or to not enter subsequent agreements without having first given written notice setting forth all the reasons for such action to the gasoline dealer at least 60 days in advance of such termination, cancellation or expiration of the existing agreement. . .

■ In the instant case, the plaintiff was notified on February 25, 1976, that his Agreement would be terminated on May 4, 1976. The natural expiration date of the Agreement was May 24, 1976. Plaintiff was notified in the February 25 letter that the cause of his termination was his failure to follow the 24-hour regulation. This notice is timely and sufficient under Ga. Code Ann. § 106–1104(b); the defendant has complied with the statute and is therefore not compelled to renew the plaintiff's Agreement.

The heart of plaintiff's argument is that the 24-hour requirement violates section one of the Sherman Act by forcing plaintiff to run an unprofitable night shift. The plaintiff contends that continued losses will force him out of business, producing lessened competition, that Crown is exercising a vertical restriction on the sale of gasoline, constituting a per se violation of section one, and that if the restriction is found not to be a per se violation it is a violation under the rule of reason and Local 189, Amalgamated Meat Cutters v. Jewel Tea

*Co.,* 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965).

The Court is unable to agree that the 24-hour requirement constitutes an anti-competitive practice. The legislative and judicial history of the Sherman and Clayton Acts "illuminates congressional concern with the protection of *competition, not competitors . . . ." Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1961). *See Travelers Insurance Co. v. Blue Cross of West. Pennsylvania,* 481 F.2d 80, 85 (3d Cir. 1973); *Overseas Motors, Inc. v. Import Motors, Ltd., Inc.,* 375 F.Supp. 499, 541 (E.D. Mich.1974). While the practice challenged here may admittedly place some strain on some individual franchises, the Court cannot find that overall competition is restricted. A violation of the Sherman Act cannot be shown by reference to hardship to an individual dealer. The regulation in question serves the public convenience and provides a competitive stimulus; it is not illegal under the antitrust laws.

The plaintiff's second contention is that the 24-hour requirement is a *per se* violation of the Sherman Act under *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The Fifth Circuit has discussed *per se* violation as follows:

> [T]he touchstone of *per se* illegality has been the purpose and effect of the arrangement in question. Where exclusionary or coercive conduct has been present, the arrangements have been viewed as "naked restraints of trade," and have fallen victim to the *per se* rule. On the other hand, where these elements have been missing, the *per se* rule has not been applied . . . .

*E. A. McQuade Tours, Inc. v. Consolidated Air Tour Manual Committee,* 467 F.2d 178, 187 (5th Cir. 1972).

In *Schwinn,* the Supreme Court declared that vertical territorial restrictions constituted a *per se* violation and declared that a manufacturer may not retain control over the conditions of resale of its product once title has passed. Plaintiff has interpreted this language in an over-broad manner; a *per se* violation cannot be found where no purpose in restraint of trade is present. Further, the 24-hour requirement does not violate the rule of reason; to prove such a violation, plaintiffs must show that the defendant "intended to or did in fact restrain competition, and that such a restraint of trade was or would have been unreasonable." The plaintiff here has not made a showing that the 24-hour requirement places a restraint on competition; a mere showing that the requirement imposes a hardship in isolated individual cases is not sufficient. Accordingly, the Court finds that the practice in question is not violative of the Sherman Act under the rule of reason.

The plaintiff's third antitrust argument is that under *Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.,* 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965), *any* regulation of hours of operation is anti-competitive. Plaintiff has not shown that *Jewel Tea,* which held that a restriction on marketing meat before 9:00 a. m. and after 6:00 p. m., was a violation of the Sherman Act, should be interpreted to hold any provision as to hours illegal; an agreement specifying minimum hours of operation, as in the instant case, should not be interpreted as falling within the *Jewel Tea* agreement which established maximum hours of operation. Plaintiff has thus failed to establish any Sherman Act violation.

The plaintiff's final argument is that the dealer Agreement in question is unconscionable. As stated in *Williams v. Walker-Thomas Furniture Co.,* 121 U.S. App.D.C. 315, 350 F.2d 445, 449 (1965), "unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." In testing reasonableness or fairness, the terms of the contract must be examined "in light of the circumstances existing when the contract was made." The test suggested in *Williams* is "whether the terms are 'so extreme as to appear unconscionable ac-

cording to the mores and business practices of the time and place.' " 350 F.2d at 450.

■ The plaintiff here makes the argument that generally oil companies exert an unusually strong bargaining power over their franchisees. The plaintiff fails, however, to make any showing that the defendant exerted such power in formulating the agreement with plaintiff, that plaintiff failed to read or understand the provisions of the Agreement, or that the provisions are in any way extreme and not in accordance with the business practices in the community. The Court presently has under consideration two other cases involving similar contracts, evidence that the clause in controversy is not atypical in the local business community. The Court cannot find that the contract in the case *sub judice* was an unconscionable contract or a contract of adhesion.

Accordingly, the Court finds for the defendant on all issues. Termination of the plaintiff's Agreement does not violate the Georgia Gasoline Marketing Practices Act, the 24-hour clause does not violate the Sherman Act, and the Agreement in question is not an unconscionable contract.

SO ORDERED, this 11 day of November, 1976.