Donald M. CLINE and Cline Plumbing & Heating, Inc., successor in interest to Plumbing Contractors, Inc., Appellants (Plaintiffs),

v.

SAFECO INSURANCE COMPANIES, Levi, Inc., and Ralph Levi, Individually, Appellees (Defendants).

No. 5260.

Supreme Court of Wyoming.

July 15, 1980.

Stuart S. Healy, of Kennedy, Connor & Healy, Sheridan, for appellants.

W. W. Reeves, of Vlastos & Reeves, P. C., Casper, for Safeco Insurance Companies, appellee.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for Levi, Inc. and Ralph Levi, appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This case arose when appellee-Safeco Insurance Companies refused to accept responsibility under a general liability insurance contract for a lawsuit initiated against appellants Donald M. Cline and Cline Plumbing & Heating, Inc., by a third party because of defective work performed by the appellants. Appellants concede that the literal language of the contract excludes coverage, but generally argue that the contract is unfair and unconscionable and that the insurance salesman, appellee-Ralph Levi, and appellee-Levi, Inc., made promises contrary to the policy. The district court granted the appellees summary judgment. Appellants argue that the district court's substantive legal conclusions, as well as the

award of summary judgment, are inappropriate.

We will affirm.

### THE FACTS AND CONTENTIONS

Donald Cline and his former wife Sharon, ran a plumbing service business called Plumbing Contractors, Inc. Mr. Cline apparently did the plumbing work or supervised employees, and Mrs. Cline discharged most of the other managerial and clerical duties. In this capacity, Mrs. Cline visited with Ralph Levi about purchasing liability insurance for the business. Mr. Levi suggested a certain insurance policy. Mrs. Cline's description of the conversation that ensued is taken from her deposition and is referred to by all parties to this appeal:

"Q   Well, tell me as best you can what your conversation with Ralph [Levi] was about the insurance.

"A   Well, I asked him just what the insurance—I said, 'What kind of insurance do we have, is it adequate or do we need more liability or what,' and he said—it sticks in my—$300,000 worth of liability, is what I thought he told me at that time. And he said, 'That should be adequate for anything that comes up,' and, let's see, then I says, 'I don't know that much about insurance, Ralph, will this cover us for bodily harm to any of our working men'? And he says, 'Well, really, you don't have that much to worry about, Sharon, because Workmen's Comp will take care of most bodily injury that you have, but I suppose that it would, if it went anything over Workmen's Comp, that it would take care of it.' And I says, 'What about any goof-ups that we do, anything that someone would sue us that we was liable for,' and he says, 'Oh, yeah, this is adequate,' I says, 'Okay, now, is this the best insurance I can buy, the very best? In other words,' I said, 'Ralph, can I go down here and buy insurance from somebody else that's better,' and he says, 'No, of course, this is the very best.'

"Q   Do you remember anything else?

"A   That's about it.

\*     \*     \*     \*     \*     \*

"A  .   .   .   what I asked for was if he thought Plumbing Contractors' policy was adequate for Cline Plumbing & Heating, that I wanted the same thing, and he said it was very adequate. So he gave me the same thing."

After this conversation, Mrs. Cline bought the Safeco policy which had been the object of their conversation. (Subsequently, the Clines were divorced and the plumbing business was reorganized as Cline Plumbing and Heating, Inc. The insurance policy was assigned. The assignment is not challenged and we recite this history merely to explain who the appellants are.)

While the insurance was in effect, Cline contracted orally with the Sawyers, trailer-court operators, to construct some water and sewer lines. Some of this work proved defective and the Sawyers sued to recover their costs in repairing or redoing the defective work. Although Cline conceded liability for connecting a water line to a sewer line, he argued that other defects were the result of using cheaper and less-desirable materials and procedures, a risk which he asserted the Sawyers had assumed. The trial judge awarded the Sawyers a judgment of $8,400.60. Cline appealed and we held that inasmuch as the case had been tried, at least in part, in negligence, the trial judge had not fulfilled his duty to make findings of fact and conclusions of law requested by Cline, concerning the apportionment of negligence. We, therefore, remanded for revision and/or supplementation of the findings of fact and conclusions of law. *Cline v. Sawyer*, Wyo., 600 P.2d 725 (1979).

When the Sawyers first sued Cline, Safeco originally defended by asserting a written non-waiver agreement. After depositions had been taken, Safeco concluded that there was no insurance coverage because the Sawyers' claim was limited to "damage

to work performed by Cline." Safeco relied on the following provisions of the insurance contract:

"This insurance does not apply:

\*   \*   \*   \*   \*   \*

"(d) to *property damage* : . . . (7) to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

\*   \*   \*   \*   \*   \*

"(g) to loss of use of tangible property which has not been physically injured or destroyed resulting from

"(1) a delay in or lack of performance by or on behalf of the *named insured* of any contract or agreement, or

"(2) the failure of the *named insured's products* or work performed by or on behalf of the *named insured* to meet the level of performance, quality, fitness or durability warranted or represented by the *named insured* ;

. . . .."

Cline's counsel concedes that appellate courts would consider the contract provisions clear and unambiguous. It was established, however, that Mrs. Cline had not completed high school and that Mr. Cline does not feel that he can properly read and understand an insurance contract. Cline argues that the above exclusions are unconscionable, particularly in light of the propensity of insurance companies to use complex language in policies and the tendency of insurance salesmen to overstate the benefits of a policy. Cline urges, from these depositions, that summary judgment was inappropriate in the case.

■ In analyzing this appeal, it is extremely difficult to determine with any more exactitude than just stated what the appellants' issues are. In clear violation of Rule 5.01(2), W.R.A.P., appellants have failed to provide "[a] statement of the issues presented for review." We have previously criticized briefs in which the arguments do not correspond on a one-to-one basis with the list of issues. *Mariner v.*

*Marsden*, Wyo., 610 P.2d 6 (1980). The absence of a list of issues is a more serious problem. We have, on many occasions, either invoked or adverted to Rule 1.02, W.R. A.P. (or its predecessor), which authorizes us, *inter alia*, to refuse to consider the contentions of a party violating the Wyoming Rules of Appellate Procedure. E. g., *Dechert v. Christopulos*, Wyo., 604 P.2d 1039 (1980); *Strang Telecasting, Inc. v. Ernst*, Wyo., 610 P.2d 1011 (1980); *Simpson v. Occidental Building & Loan Ass'n*, 45 Wyo. 425, 19 P.2d 958 (1933); *Robertson v. Shorow*, 10 Wyo. 368, 69 P. 1 (1902); and *Trabing v. Meyer*, 3 Wyo. 133, 5 P. 569 (1885). It is not our job to draw up a list of issues to frame appellant's argument. For this court to undertake this task would mean that we would run the risk of deciding the appeal on an issue with respect to which the appellee had not been notified and thus had inadequate defense opportunities.

In the "Preface to Argument" section of appellants' brief, there is a statement to the effect that we need be concerned on appeal with "only the issue of whether Summary Judgment was properly rendered as a matter of law, in this instance under the facts and circumstance peculiar to the separate claims of the Appellants."

This is not a particularly helpful statement of an issue. We view appellants' main argument as being that the insurance contract was unconscionable and that there are apparently factual disputes relevant to the unconscionability argument which were improperly resolved against the appellants in order to reach the summary judgment. Appellants' full argument section supports additional issues, but we are not going to frame these other issues for the appellants.

## UNCONSCIONABILITY

*Engine Service, Inc. v. Reliance Insurance Company*, Wyo., 487 P.2d 474 (1971), is relevant to the issue here for decision and is a case which appellants concede has been favorably received by other appellate courts. *Engine Service*, supra, involved a suit by an insured against its insurer. The

insured rebuilt a large engine but did not do a satisfactory job the first time. It subsequently repaired the rebuilt engine without charging the customer and sued the insurer. The insurer defended by relying on an exclusion clause virtually identical to the one here. We affirmed the judgment for the insurer. We conceded that the insured might have had the impression it was covered for the claim it made, but we said, "[t]he rule that an ambiguous contract must be interpreted most strongly against the one drafting it, especially if such be an insurance company, is of course applicable only if the policy is found to be ambiguous." Id. at 476.

In *Engine Service, Inc.*, we did not directly confront a claim of unconscionability, but when we did so in *Matter of Estate of Frederick*, Wyo., 599 P.2d 550, 556 (1979), we surveyed the law on unconscionable contracts and said:

"Unconscionability is . . . considered as a form of fraud recognized in equity, but such fraud should be 'apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; which are unequitable and unconscientious bargains,' *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed.2d 393 (1889). The Supreme Court of Oklahoma has defined the test of unconscionability as whether, 'under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties.' *Barnes v. Helfenbein*, Okl., 548 P.2d 1014, 1020 (1976). Other courts have indicated that in the context of the formation of the contract it is important to determine whether the [persons claiming that the contract is unconscionable] were deprived of meaningful choice as to whether to enter into the contract (*Gordon v. Crown Central Petroleum Corp.*, supra [423 F.Supp. 58 (D.Ga. 1976)]; *Williams v. Walker-Thomas Furniture Company*, 121 U.S.App.D.C. 315, 350 F.2d 445 (1965)); whether the [persons claiming that the contract is unconscionable] were compelled to accept the terms (*Jamestown Farmers Elevator, Inc. v. General Mills, Inc.*, supra [413 F.Supp. 764 (D.N.D. 1976)], whether there was opportunity for meaningful negotiation (*Clinic Masters, Inc. v. District Court In and For County of El Paso*, Colo. [192 Colo. 120], 556 P.2d 473 (1976)); and whether there was such gross inequality of bargaining power that negotiations were not possible for the aggrieved party, or whether the aggrieved party was underprivileged, uneducated or illiterate and the type of person easily deceived or taken advantage of, or whether the aggrieved party could comprehend and was aware of the agreement or was in some manner surprised by fine print or concealed terms (*Willie v. Southwestern Bell Telephone Company*, 219 Kan. 755, 549 P.2d 903 (1976)) . . . ."

Applying the test of equitable fraud, we see nothing outrageous about the contract. Appellants do not argue that insurance companies customarily offer policies without the exclusion clause contested here or that the presence of this exclusion clause was in any way shocking by comparison with other available insurance policies.

Applying the test of the Oklahoma Supreme Court quoted above, we do not think that, in light of the general commercial background and commercial needs of this particular case, the exclusion clause was so one-sided as to oppress or unfairly surprise the Clines. The clause makes Cline a self-insurer for the cost of repairs to his own work; were this not so, it cannot be doubted that the cost of an insurance premium would be much higher. That Mrs. Cline may have been surprised by the result of the exclusion clause does not make the surprise unfair. And, indeed, Mrs. Cline, in her deposition, stated that she did not expect the insurance company to pay for the cost of correcting the mistaken connection between the water and sewer lines. Taking Mrs. Cline's expectations into account, we

do not believe (even if we accept, as we must on an appeal from summary judgment, all of Mrs. Cline's factual statements) that Levi's assurance that the insurance would pay for "goofups" was such as to make the contested exclusion an "unfair surprise."

We recognize that there was undoubtedly great disparity between the legal acumen of the Safeco attorneys who drafted the insurance contract and that of the Clines. In addition, we realize that Safeco very possibly would have refused to individually negotiate an insurance contract with the Clines. But we find no evidence or allegation that the actual exclusion complained of was unfair.

### SUMMARY JUDGMENT

■ Summary judgment is appropriate if there are no material factual disputes. *Strang Telecasting, Inc. v. Ernst,* supra, and *Moore v. Kiljander,* Wyo., 604 P.2d 204, 206–207 (1979). In reviewing a summary judgment, we must resolve factual disputes in favor of the party opposing the motion for summary judgment. *Strang Telecasting, Inc.,* supra.

In support of the claim that summary judgment was improper, appellants cite us deposition testimony of Mr. Cline, in which he states that the trial judge was wrong in awarding judgment to the Sawyers and that Cline believes his insurance should protect him against the trial judge being wrong. That is a naive expectation, and even if we credit the sincerity of Cline's belief we don't see how his belief is material. We are also cited Mrs. Cline's deposition testimony in which she states that she believed she was buying protection against a lawsuit.

Appellants then argue that, "it was improper for the District Court to disregard such background data . . . to the exclusion of all questions of unconscionability which might have been developed . . . in the trial setting." We do not assume that the trial judge disregarded such background data, and, as we said in *Moore v. Kiljander,* supra, at 207:

". . . Granted the movant [for summary judgment] has the initial burden of presenting a prima facie case, once this is accomplished the opposing party may not merely stand upon his pleadings. The burden shifts and the opposing party must show that there is a genuine issue of material fact. . . ."

In other words, once the insurance company or insurance salesman shows that the policy language excluded coverage, and once the Clines' testimony on their conversations with Levi and their expectations has been credited as true, if the district court is still of the current opinion that the appellees are entitled to judgment as a matter of law, summary judgment is proper. The appellants missed their opportunity—if, indeed, it ever existed—to allege or establish such additional facts that, if true, would make an award of judgment for the appellees improper.

Affirmed.