Raymond M. RICCI, Bernadette Ricci, Phillip W. Patrick, Diana Patrick, Donnie R. Haney, Sandra Haney, Nona Gail Anderson, Leo R. Hendricks and Betty L. Hendricks, Appellants (Defendants and Third-Party Plaintiffs),

Heritage Homes, Inc., Steve Beilgard, Dale Knife, Reginald Haakinsonn, Jean Haakinsonn, Jacob Kaufman, Elva Kaufman, Jodie Nixon, Aase Nixon, (Defendants and Third-Party Plaintiffs),

v.

NEW HAMPSHIRE INSURANCE COMPANY, a New Hampshire corporation, Appellee (Plaintiff),

St. Paul Fire and Marine Insurance Company, Appellee (Third Party Defendant).

Heritage Homes, Inc., Steve Beilgard, Appellants (Defendants and Third-Party Plaintiffs),

Raymond M. RICCI, Bernadette Ricci, Phillip W. Patrick, Diana Patrick, Donnie R. Haney, Sandra Haney, Nona Gail Anderson, Leo R. Hendricks and Betty L. Hendricks, Dale Knife, Reginald Haakinsonn, Jean Haakinsonn, Jacob Kaufman, Elva Kaufman, Jodie Nixon, Aase Nixon, (Defendants and Third-Party Plaintiffs),

v.

NEW HAMPSHIRE INSURANCE COMPANY, a New Hampshire corporation, Appellee (Plaintiff),

St. Paul Fire and Marine Insurance Company, Appellee (Third-Party Defendant).

Nos. 85–234, 85–235.

Supreme Court of Wyoming.

July 3, 1986.

Clay B. Jenkins and H.W. Rasmussen, Badley & Rasmussen, P.C., Sheridan, for appellants Ricci.

Leslie W. Hawkey, Jr., Gillette, for appellants Heritage Homes, Inc., and Beilgard.

Robert W. Connor, Jr., Sheridan, and William L. Senter and Mark C. Overturf, Greengard & Senter, Denver, Colo., for appellee New Hampshire Ins. Co.

Robert W. Brown, Lonabaugh & Riggs, Sheridan, for appellee St. Paul Fire and Marine Ins. Co.

Before THOMAS, C.J. and CARDINE and MACY, JJ.; GUTHRIE, J., Retired, and RAPER, J., Retired.

THOMAS, Chief Justice.

The main question which we must resolve in this case is whether the exclusions from the coverage of general liability insurance policies were articulated with sufficient clarity to permit the trial court to enter a summary judgment in favor of the insurance carriers. There are collateral issues relating to the extension of coverage, in the case of one policy, beyond the terms of the written policy by virtue of representations of the selling agent and whether such a theory of coverage was waived by the failure to assert it in the district court. The district court held that coverage was excluded as a matter of law, and it granted a summary judgment in favor of New Hampshire Insurance Company declaring the rights and liabilities of the parties under its policy. It then dismissed the claim against St. Paul Fire and Marine Insurance Company. We affirm the judgment of the district court.

The parties have suggested different statements of the issues for our consideration. Heritage Homes, Inc., and Steve Beilgard, the principal in the corporation (the insured), state the issues in this way:

"I. Factual issues exist and the court erred in granting the summary judgment motion of appellees.

"II. Appellees' printed policies are confusing and ambiguous, and should be construed in favor of the insured."

The appellants (the third-party beneficiaries) who are owners of homes purchased from Heritage Homes, Inc., set forth the issues in this way:

"I. The insurance policies are 'occurrence' policies and provide coverage for the appellant's damages.

"II. The insurance policies are ambiguous, and should be construed in favor of the insured.

"III. A factual issue precludes summary judgment."

As appellee, New Hampshire Insurance Company suggests these issues:

"I. Whether New Hampshire Insurance Company's comprehensive general liability insurance policy purchased by Heritage Homes, Inc. excludes coverage for damages to the houses built by Heritage Homes, Inc.

"II. Whether appellants may rest on their pleadings to create a question of fact sufficient to defeat a motion for

summary judgment in favor of New Hampshire Insurance Company."

The appellee, St. Paul Fire and Marine Insurance Company, urges the following issues:

"1. Whether the damages suffered by the appellant homeowners which occurred prior to the effective date of the St. Paul policies are covered by the policies of the St. Paul Fire and Marine Insurance Company?

"2. Whether the St. Paul Fire and Marine Insurance Company policies provide coverage for the damages suffered by the appellant homeowners when the policies specifically exclude coverage for property damage to the named insured's products arising out of such products or any part of such products and for property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith?

"3. Whether representations of the selling agent extend coverage beyond the terms of the written policy?

"4. Whether appellants may raise on appeal theories or arguments which were expressly disavowed by appellants at the trial level or were not even presented?"

Beginning sometime prior to 1978, Heritage Homes, Inc., constructed houses in a subdivision of Gillette. The individuals other than Steve Beilgard who are named as parties all purchased homes from Heritage Homes, Inc., during the period from July, 1977, through June, 1978. In the spring and early summer of 1978, the homeowners discovered water seepage in the basements of their respective homes. That seepage continued up until the time of trial of their action against Heritage Homes, Inc., and Beilgard which was premised upon theories of negligence and breach of warranty. The several homeowners were awarded damages for the diminution in value of their respective homes, and the judgments in their favor aggregated $146,768.25. These judgments were entered on June 8, 1983, and they were affirmed by this court in

*Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984).

Heritage Homes, Inc., obtained general liability insurance first from New Hampshire and later from St. Paul. The New Hampshire coverage was in effect from March 3, 1976, until June of 1978. The St. Paul coverage began on June 27, 1978, and continued until June 27, 1981. In addition, on March 30, 1981, Heritage Homes, Inc., purchased from St. Paul a "Comprehensive General Liability Broadening Endorsement."

The St. Paul policy in effect from June 27, 1978, to June 27, 1981, provided coverage in this language:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of * * * property damage to which this insurance applies, caused by an occurrence, * * *."

That policy went on to provide with respect to exclusions from coverage:

"(a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner.

\* \* \* \* \* \*

"(m) to property damage to the Named Insured's products arising out of such products or any part of such products;

"(n) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

\* \* \* \* \* \*

The pertinent language in the St. Paul "Comprehensive General Liability Broadening Endorsement" which was purchased on March 30, 1981, reads:

"A. The exclusion relating to * * * work performed by or on behalf of the Named Insured arising out of work or

any portion thereof, or out of materials, parts or equipment furnished in connection therewith, [is] replaced by the following exclusions:

\* \* \* \* \* \*

"(2) with respect to the completed operations hazard and with respect to any classification stated in the Declarations as 'including completed operations', to property damage to work performed by the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

The New Hampshire Comprehensive Liability Insurance Policy, which was in effect from 1976 to 1978, is not a part of the record, but New Hampshire admitted that the policy provided for exclusions from coverage in the following language:

"(a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

\* \* \* \* \* \*

"(n) to property damage to the Named Insured's products or any part of such products;

"(1) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

When the homeowners discovered in 1984 that Heritage Homes, Inc., and Beilgard were judgment-proof, the homeowners served garnishee notices and summonses on New Hampshire and St. Paul. On July 6, 1984, St. Paul answered the garnishee notices and summonses. Instead of answering, New Hampshire filed a declaratory judgment action in United States District Court on June 7, 1984, in which it sought a declaration that it was not liable under its policy for the judgments obtained

against Heritage Homes, Inc., and Beilgard, and affirmative relief was sought in the form of an injunction against the garnishment proceedings. The defendants in the declaratory judgment action were Heritage Homes, Inc., Beilgard, and all of the homeowners who had proceeded with the garnishee notices and summonses. On July 26, 1984, the garnishee notices and summonses were withdrawn, and the case in United States District Court then was transferred to the District Court of Campbell County, Wyoming. After the case was transferred to the state court Heritage Homes, Inc., and Beilgard filed a third-party complaint against St. Paul and a counterclaim against New Hampshire.

All of the parties then moved for summary judgment. After a hearing on the motions the district court concluded that the damages represented by the judgments entered against Heritage Homes, Inc., and Beilgard were excluded from coverage under the insurance policies. The district court then entered its order granting summary judgment to New Hampshire and dismissing with prejudice the third-party complaint against St. Paul and the counterclaim against New Hampshire. It is from that order granting summary judgment that this appeal is taken.

In their briefs and arguments the appellants contend that a reading of the three exclusions in the New Hampshire and St. Paul insurance policies results in a conclusion that those policies are ambiguous. They invoke then the proposition that because the policies are ambiguous they must be construed against the insurance companies which are the drafters of the respective policies. The appellants also argue that even if these exclusions are not ambiguous, the general endorsement by St. Paul, which was added to its policy in March, 1981, when read with the other three exclusions, results in an ambiguity. The appellants vigorously urge that because the asserted ambiguity creates a question of fact with respect to the intent of the parties to the insurance policies it was inappropriate for the district court to grant summary

judgment. We are satisfied that the case is resolved by a determination of whether the two insurance policies in question excluded coverage for the claims represented by the homeowners' judgments against Heritage Homes, Inc., and Steve Beilgard. If the policies did exclude coverage then there is no inhibition against the grant of summary judgment by the district court in this case.

■ Our usual rule is that the interpretation of a contract is a question for the court to resolve as a matter of law. This rule pertains if the language in the contract is plain and unequivocal. *Kost v. First National Bank of Greybull*, Wyo., 684 P.2d 819 (1984); *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, Wyo., 664 P.2d 27 (1983); *Worthington v. State*, Wyo., 598 P.2d 796 (1979); and *Shepard v. Top Hat Land and Cattle Company*, Wyo., 560 P.2d 730 (1977). In those instances in which the language of the contract is clear and unambiguous the intention of the parties is to be derived from the contract itself. *Cheyenne Mining and Uranium Company v. Federal Resources Corporation*, Wyo., 694 P.2d 65 (1985); *Tate v. Mountain States Telephone and Telegraph Company*, Wyo., 647 P.2d 58 (1982); *Sunburst Exploration, Inc. v. Jensen*, Wyo., 635 P.2d 822 (1981); and *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980). These rules extend to insurance policies which are contracts; an unambiguous contract requires no interpretation; and issues with respect to its construction are appropriate for determination upon a motion for summary judgment. *Moewes v. Farmer's Insurance Group*, Wyo., 641 P.2d 740 (1982).

■ The language of the policies in this case is not ambiguous. The first exclusion in subparagraph (a) addresses liability assumed by the insured under any contract or agreement but there is excepted from that exclusion any warranty of fitness or quality of the insured's products or a warranty that work performed by or on behalf of the insured will be done in a workmanlike manner. If that were the only language in these policies the contentions of these appellants would be far more persuasive. These policies go on, however, to provide separately for exclusions of property damage to the insured's products arising out of the products or any part of the products and, in addition, to property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith. This policy language plainly excludes those events which gave rise to the claims for damages by the homeowners against Heritage Homes, Inc., and Steve Beilgard. "Ambiguity * * * is not generated by subsequent disagreement of the parties concerning its [the contract's] meaning." *Marcam Mortgage Corporation v. Black*, Wyo., 686 P.2d 575 (1984); *Sunburst Exploration, Inc. v. Jensen*, supra; and *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra. These insurance policies are not subject to being construed against the insurance companies as drafters because that rule is only to be invoked if the insurance policies are ambiguous. *Cline v. Safeco Insurance Companies*, Wyo., 614 P.2d 1335 (1980). See also, *Kost v. First National Bank of Greybull*, supra.

In *Engine Service, Inc. v. Reliance Insurance Company*, Wyo., 487 P.2d 474, 475 (1971), we considered an exclusion from policy coverage which provided:

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith * * *."

In that case we resolved the narrow issue, which also is present in this case, of whether because of the language of the exclusion the policy provided no coverage for damage to an engine which resulted from the insured's own negligence in rebuilding it. We held that the exclusion applied to such an occurrence, and the damage was not covered. In the opinion we quoted with

approval from *Vobill Homes, Inc. v. Hartford Accident and Indemnity Company*, 179 So.2d 496 (La.App.1965), in which the exclusionary clause provided that there would be no coverage for "injury to * * * any * * * products * * * sold, * * * or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises * * *." We there recognized that the Louisiana court's determination that this exclusion unambiguously provided no coverage for the enumerated property damage was in line with the general rule that such exclusions provide for no coverage for the insured's own defective work or defective product. *Engine Service, Inc. v. Reliance Insurance Company*, supra, 487 P.2d at 475.

In *Cline v. Safeco Insurance Companies*, supra, 614 P.2d at 1337, this court considered language of an exclusion similar to the one in this case. The policy in that instance provided that coverage did not apply to:

> "(d) property damage: * * * (7) to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

In *Cline v. Safeco Insurance Companies*, supra, the insured conceded that the effect of the holding of this court in *Engine Service, Inc. v. Reliance Insurance Company*, supra, was that the language in the Cline policy excluded coverage for damages encompassed by a judgment awarding damages to third parties against the plumbing company for negligent work. *Cline v. Safeco Insurance Companies*, supra, 614 P.2d at 1335. The court also concluded that such a clause was not unconscionable. Id., 614 P.2d at 1338.

The language of the insurance policies in this instance is plain and unequivocal. We previously have held that such clauses exclude coverage for the insured's own negligent work. The language of these policies also excludes coverage for any breach of warranty with respect to such work.

Those were the theories asserted by the homeowners in their action against Heritage Homes, Inc. and Beilgard, and the district court correctly determined that summary judgment could be entered in favor of the insurance companies in this instance because policy coverage did not extend to liability of Heritage Homes, Inc., and Beilgard for the claims represented by the judgments in favor of the homeowners. Consistently with prior decisions the policy language provides for no coverage for the damages which were adjudicated in favor of the homeowners.

We turn to the counterclaim of the appellants that St. Paul is estopped from arguing that its 1981 policy endorsement did not extend the coverage which the appellants claim. An affidavit by Steve Beilgard was submitted which recites that when he purchased the 1981 rider the selling agent informed him that his coverage now was complete excepting only acts of God, acts of war, nuclear disaster and chemical spills. The appellants insist that the uncontroverted allegations in Beilgard's affidavit demonstrate that St. Paul either waived any right to contend that the claimed coverage was not extended or is estopped from asserting that the coverage was not extended. At the least the appellants insist the affidavit structures a genuine question of material fact which would preclude summary judgment in this instance. The contention of the appellants in this regard is foreclosed for two reasons.

In *State Farm Mutual Automobile Insurance Company v. Petsch*, 261 F.2d 331 (10th Cir.1958), the United States Court of Appeals for the Tenth Circuit stated that the law in Wyoming is that coverage cannot be extended by waiver or estoppel. This same principle was approved by this court in *Sowers v. Iowa Home Mutual Casualty Insurance Company*, Wyo., 359 P.2d 488 (1961). See also *Tadday v. National Aviation Underwriters*, Wyo., 660 P.2d 1148 (1983). This court held in *Sowers v. Iowa Home Mutual Casualty Insurance Company*, supra, that no evidence in the record supported a finding that the

agent represented that the policy would have broader coverage than the normal automobile 500-mile radius restriction. This court also recognized the general rule that waiver and estoppel cannot extend coverage of a policy or bring within its purview risks which specifically are excluded.

■ Recognizing this to be the rule, then Beilgard's affidavit does not structure a genuine issue of material fact. We have defined a material fact as one which has some legal significance to the dispute at hand and one upon which the outcome of the litigation may depend. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). Because the representations of the selling agent for St. Paul could not as a matter of law extend the coverage of the policy by waiver or estoppel the factual statements in Beilgard's affidavit do not set forth facts which are material to the resolution of this controversy. Beilgard's affidavit did not inhibit the right of the district court in this instance to dismiss the third-party complaint against St. Paul even though a factual question may have been structured by Beilgard's affidavit.

Furthermore, the record discloses that these appellants did not assert waiver or estoppel in the trial court. At the hearing on the motion the trial court expressed concern with respect to Beilgard's affidavit purportedly addressing waiver or estoppel. The judge asked St. Paul's attorney:

"THE COURT: Okay. Before you start, I notice that there's an affidavit in the file from Mr. Beilgard which would apparently claim some sort of unrepresentation or misrepresentation of policy limits with respect to both of these policies.

"How does that affect your motion for summary judgment?

"MR. BROWN: Your Honor, I believe the motion states—or the affidavit states—that there was no—not that there was misrepresentation as to policy limits but as to coverage.

"The affidavit basically states that it was Mr. Beilgard's understanding that there—that the policies covered him for

everything, I believe is the gist of the affidavit. And we have addressed that issue in our brief and will address it briefly in the oral arguments today.

"THE COURT: You think that those facts—I notice that you've not filed any counter-affidavits, so I take it that you accept those—his statements—as true and say that they're not material facts—

"MR. BROWN: Yes, that's correct, Your Honor.

"THE COURT: —to any of the issues.

"MR. BROWN: It may be that those things were said to Mr. Beilgard on that occasion. We believe that we are still entitled to summary judgment as a matter of law, and we'll have a brief argument for that proposition."

At a later point the attorney for the appellants explained:

"MR. HAWKEY: I'd like to make a couple preparatory statements that perhaps can clarify some of the issues before the Court at this time.

"First of all, it's our understanding that the matter before the Court is upon the complaint for declaratory relief which was filed by the New Hampshire Company. And it's also our understanding that we're here to discuss a legal determination by the Court which is limited to the issue of whether or not coverage should have been provided pursuant to the language contained herein.

"The affidavit which was prepared by my office and executed by Mr. Beilgard is not attempting to say that there are facts material to this case which need to be heard. As a matter of fact, the contrary is true. The affidavit was merely prepared to put some form and substance to the expectation of the insured when he purchased the policy that is before the Court. And the affidavit does go to the language that's contained in the policy which was consistent with the representations made by the agent, and that's the only reason for the affidavit.

"And we would, of course, since there are no opposing affidavits, ask that the Court consider those facts as before the

Court and undisputed for purposes of this hearing."

When the trial court specifically asked whether waiver and estoppel were being argued based on Beilgard's affidavit the following occurred:

"THE COURT: Okay. You're not arguing waiver or estoppel or any of those things with respect to that, then?

"MR. HAWKEY: No, Your Honor. As I tried to say at the outset, we are here for the limited purpose of having a decision made on the declaratory relief sought by New Hampshire's company as to whether or not, pursuant to the legal conclusions drawn from this document, there should have been coverage. * * * "

■■■ Ordinarily new issues cannot be raised on an appeal. *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13 (1984). The exception to this general rule is that the issue may be raised if the agency or the lower court did not have subject matter jurisdiction with respect to that issue. *Laramie Printing Trustees v. Krueger*, Wyo., 437 P.2d 856 (1968). Absent this exception it is well established that "[a] new theory cannot be asserted on appeal." *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 519 P.2d 972, 978 (1974), appeal after remand, 540 P.2d 535 (1975), and cases cited therein. The same rule is articulated in *Appeal of Williams*, Wyo., 626 P.2d 564, 571, cert. denied by *Williams v. Public Service Commission of Wyoming*, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981), as follows:

"As a general rule, parties are bound by the theories they advanced below. Further, under the doctrine of invited error, if a party induces action by a court or an agency, he will not be heard on appeal to argue error based upon that action." (Citations omitted.)

On the basis of this rule the appellants cannot be heard with respect to the issue of coverage by waiver or estoppel which they eschewed in the district court. Even if there were substantive merit in their position they would be foreclosed.

On the clear language of the policy provisions the district court properly granted the summary judgment and dismissed the third-party complaint and the counterclaim. There is no basis for finding coverage on the part of St. Paul upon the claim of waiver and estoppel. The judgment of the district court is affirmed.