Paul **STODDARD** and Linda **Stoddard,** Plaintiffs,

v.

The **CONTINENTAL INSURANCE COMPANY,** Defendant.

No. C88–0150J.

United States District Court, D. Wyoming.

Dec. 28, 1988.

Bailey, Pickering, Stock & Welch, Cheyenne, Wyo., for plaintiffs.

Patrick Murphy, Casper, Wyo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOHNSON, District Judge.

### Background

On February 24, 1971, members of the Stoddard family incorporated their ranching business as a Wyoming corporation. The officers and directors of Stoddard Ranches, Inc., are W.A. (Webb) Stoddard and his three sons and their wives. Robert Stoddard is 45 years old, is married to Gail Stoddard, and lives on a ranch north of Douglas. He is the chief executive officer of Stoddard Ranches, Inc., and is the ranch manager for one Stoddard Ranch property. He and Gail own a separate ranch in their own names. Paul Stoddard is 42 years old, is married to Linda (Punk) Stoddard, and lives on one of the separate corporate ranches, located northwest of Lusk, Wyoming. He manages the northeast ranch of Stoddard Ranches, Inc. J.R. Stoddard is 36 years old, is married to JoAnn Stoddard, and lives on a separate ranch near Wright, Wyoming. He is the ranch manager for the north ranch. The shareholders are Webb Stoddard, Robert Stoddard, Paul Stoddard, J.R. Stoddard, and Sally Stoddard Seebaum (Webb's daughter).

The three brothers and their wives are employees of Stoddard Ranches and each draw a salary from the corporation. Since August 1974 Paul Stoddard has been exclusively employed by Stoddard Ranches. In 1978 Robert and Gail Stoddard started their own ranch entity while continuing their duties for Stoddard Ranches. On July 2, 1987, Paul Stoddard was helping move Bob and Gail's cattle located on their ranch. His help was required in part because a few days earlier Robert had fallen from a windmill and broken his leg. While on Robert's ranch to help, Paul Stoddard was bucked from his horse and tragically rendered a quadriplegic by the resulting fall.

From its inception, Stoddard Ranches obtained insurance coverage. Webb Stoddard and his wife procured the insurance from 1970 to 1976 when Webb's wife died. From 1976 until early 1980, Webb's daughter and son-in-law, Sally and Bernie Seebaum, procured the insurance. They left Stoddard Ranches after obtaining a ranch of their own north of Douglas. From 1980 to the present Gail Stoddard managed the

insurance responsibilities of Stoddard Ranches.

In the fall of 1981, Bob and Gail Stoddard visited John Drew, the insurance agent at the KML Insurance Agency in Douglas, Wyoming. They purchased a farm liability insurance policy written by INA Insurance Company for a one-year term beginning October 15, 1981. They also obtained a farm liability policy for Stoddard Ranches, Inc. This policy was for a one-year term beginning January 2, 1982. This policy was renewed for two successive years.

In 1982, Ed Ricks purchased the KML Insurance Agency and replaced John Drew as the insurance agent handling the Stoddards' accounts. In the fall of 1984, INA advised him that it would no longer furnish insurance coverage under either policy. He found other similar policies for them from Continental Insurance Company. This coverage took the form of a "Rancher/Farmer's Deluxe Policy." Robert and Gail Stoddard's policy was for a three-year period beginning October 15, 1984. Attached to the policy was a "Farm Employee Coverage Amendment." The policy issued to Stoddard Ranches was the same except it applied only for a single year, beginning January 2, 1985. A "Farm Employee Coverage Amendment" was attached to the Stoddard Ranches policy. This policy and amendment were renewed for two successive years.

This lawsuit involves a dispute as to what course an injured farm employee must take to benefit under the $500,000 policy coverage for bodily injuries. The parties direct the court to the Stoddard Ranches policy and its attached amendment. Plaintiffs contend that these two documents create a worker's compensation policy requiring payment to Paul Stoddard upon his injury. Defendant contends that these two documents create a liability policy requiring that Stoddard Ranches be found legally liable before bodily injury payments are made. The parties agree that Paul Stoddard is entitled to $1,000 in medical payments under the policy.

This lawsuit began on May 23, 1988, when plaintiffs filed their complaint. On June 24, 1988, defendant filed its answer. On July 26, 1988, pursuant to a stipulation of the parties, defendant filed its counterclaim seeking a declaratory judgment on the issue of insurance coverage. On August 18, 1988, plaintiffs replied to the counterclaim. On October 21, 1988, defendant filed a motion for summary judgment. On November 9, 1988, plaintiffs filed their resistance to this motion. On November 17, 1988, defendant filed a reply memorandum in support of its motion for summary judgment. On November 18, 1988, plaintiffs filed a response to the reply memorandum.

### Wyoming Insurance Law

An insurance policy is a contract. *State Farm and Fire Casualty Company v. Paulson*, 756 P.2d 764, 765 (Wyo.1988). To determine policy coverage, a court must examine the policy and apply established rules of interpretation and construction. *St. Paul Fire and Marine Insurance Company v. Albany County School District No. 1*, 763 P.2d 1255, 1258 (Wyo.1988). Interpretation of a written contract is a matter of law for the court. The court's primary purpose in interpreting a contract is to ascertain the intent of the parties and to effectuate that intent by giving policy terms their plain, ordinary, and customary meaning. *Worthington v. State*, 598 P.2d 796, 806 (Wyo.1979).

Insurance policies are construed by the same rules as other contracts except where policy language is ambiguous. *Paulson*, 756 P.2d at 765. Ambiguous policy language is strictly construed against the insurer, *Worthington*, 598 P.2d at 806, and liberally construed in favor of the insured, *Paulson*, 756 P.2d at 765. Policy language is ambiguous when it has a double meaning or is indefinite or obscure in meaning. *Id.* at 766. Subsequent disagreements between the parties regarding the meaning of a policy do not create an ambiguity. *Albany School District No. 1*, at 1258 (citing *Ricci v. New Hampshire Insurance Company*, 721 P.2d 1081 (Wyo.1986)); *Marcam Mortgage Corporation v. Black*, 686 P.2d 575 (Wyo.1984). Courts, of course, are not

allowed to "torture" policy language to create an ambiguity. *Paulson,* 756 P.2d at 767.

## The Policy Dispute

### A. Medical Payments Coverage

■ Under the Farm Liability Coverage part of the policy, it is agreed that

> [w]e will pay the necessary **medical expenses** incurred or medically ascertained within three years from the date of an accident causing bodily injury as long as the accident is covered under your Liability Coverage for bodily injury.

Plaintiff is entitled to $1,000 reimbursement for medical payments, the limit of coverage. This is so because his accident was covered under Stoddard Ranches' "liability coverage for bodily injury." Without the amendment, the policy would preclude Paul Stoddard's injury from being covered under the policy's liability coverage. This is so because of policy restriction 4 on bodily injury coverage, which provides as follows: "**Farm Employees.** We do not cover **bodily injury** to any **farm employees** arising out of and in the course of employment." If this provision applied, Paul Stoddard would not be entitled to medical coverage since his accident would not be covered under Stoddard Ranches' "liability coverage for bodily injury."

This exclusion from coverage does not apply in this case, however, since Stoddard Ranches obtained an amendment superseding the restriction.[1] Under the Farm Employee Coverage Amendment, Continental agreed to cover bodily injury sustained by a farm employee of Stoddard Ranches. This means that Paul Stoddard's accident was covered under Stoddard Ranches' "liability coverage for bodily injury." Accordingly, Paul Stoddard is entitled to $1,000 from Continental for medical bills incurred.[2]

### B. Bodily Injury Liability Coverage

■ Stoddard Ranches is a "covered person" under the policy. As such, Continental owes the ranch corporation certain duties in specific circumstances as defined in the policy. Ordinarily a covered person under this policy could not look to the insurer for protection against a claim made by an injured farm employee. This result is changed by the Farm Employee Coverage Amendment, which provides coverage to Stoddard Ranches for bodily injuries sustained by its farm employees. Plaintiff is a "covered farm employee" in the sense that Stoddard Ranches is covered against bodily injuries sustained by him. Neither the policy nor the amendment provides a farm employee his own coverage against bodily injury. The amendment does not change the position of the farm employee. He must prevail in an action brought against the covered person, here Stoddard Ranches. The effect of the amendment is simply to provide Stoddard Ranches with coverage should the farm employee succeed in his suit against it. When the farm employee has established that Stoddard Ranches is legally liable for his injury, Continental has agreed to pay any amount up to $500,000.

Plaintiffs have sued Continental directly rather than first proceeding against Stoddard Ranches. They do so under the belief that the policy and amendment create a worker's compensation policy rather than a liability policy. If this were correct, they

---

1. Continental has attached to its motion for summary judgment some other available amendments to the policy. These include a Crop Dusting and Spraying Operation Amendment, Off–Road Recreational Vehicles Amendment, and Boat Amendment. As with the Farm Employee Coverage Amendment now before the court, these amendments provide additional liability coverage. The court cannot agree with plaintiffs that the amendment creates a worker's compensation policy for farm employees. As noted in the amendment, "[a]ll other provisions of your policy apply."

2. The parties have differing accounts as to why Paul Stoddard does not yet have the $1,000. Continental contends that it tendered this amount before this lawsuit was filed but that Paul Stoddard rejected the tender. Memorandum in Support of Summary Judgment at 35. Paul Stoddard contends that the $1,000 has been held for ransom until he provided a full release of *all* claims. Memorandum in Resistance to Summary Judgment at 8. The court finds this amount due and that it should be paid without delay, no strings attached.

could justifiably by-pass the requirement that Stoddard Ranches first become legally liable to them. Plaintiffs have set forth two rationales in support of their theory.

First, plaintiffs argue that the terms "provide coverage" and "pay full benefits" are synonymous. Memorandum in Resistance at 5. They then declare that the policy is ambiguous. In support of this argument, they point to certain statements by Continental's attorney and its chief claims representative that, they say, demonstrate Continental's own inability to distinguish between "we cover" and "we pay." Having read these quotations, the court concludes that plaintiffs have misperceived their meaning. Although defendants do deny coverage, the coverage denied is to Paul Stoddard. The court agrees that Paul Stoddard is not a covered person under the policy. Defendants have consistently maintained that Stoddard Ranches is a covered person under the policy.

Second, plaintiffs point to instances in which injured Stoddard Ranch employees have received medical payments without legal liability having been established. They argue that this amounts to a course of prior dealings in which the legally liable requirement has been waived. This argument is mistaken. As previously noted, medical payment coverage does not depend on legal liability. It simply depends upon coverage as defined in the policy.

All portions of the policy support Continental's view that a liability policy, and not a worker's compensation policy, is at issue. The heading is "Farm Liability Coverage Part." The subpart on "Bodily Injury Liability Coverage" differs from that on "Medical Payments Coverage" in that the former requires legal liability be shown before payments are made. Under the clear and unambiguous terms of the policy, plaintiffs cannot proceed directly against Continental without establishing that Stoddard Ranches is legally liable for Paul Stoddard's injuries. Because the policy language is clear and unambiguous against plaintiffs, all their claims for relief fail. *See Albany County School District No. 2*, at 1263.

C. Parol Evidence

Even if the court were able to find an ambiguity, it could not find that the parties intended anything but liability coverage. Continental's intent could hardly be more clear. It issued a liability policy and an amendment to it granting previously excluded coverage. Stremick Affidavit at 5. Continental provides a separate "Worker's Compensation and Employers Liability Policy" covering a named insured's employees injured during employment regardless of fault or legal liability. *Id.* at 6–7. Continental could hardly expect that the provisions of its worker's compensation policy would in effect be applied to a farm liability policy.

Although the Stoddards have expressed their beliefs that the policy and amendment provided worker's compensation coverage, the court cannot reasonably say that was their intent. Sometime after 1982, the Stoddards visited each other about obtaining worker's compensation coverage from the state of Wyoming. They decided against it due to its complicated nature. Robert Stoddard Deposition at 17–18. No member of the Stoddard family discussed with their insurance agent, Ed Ricks, the possibility of obtaining worker's compensation coverage. Gail Stoddard Deposition at 14–15. Further, Gail Stoddard did not read the policy. *Id.* at 13–21. Finally, in 1984, a Stoddard Ranch employee was thrown off a horse and incurred $1,465 in hospital bills and $322 in medical bills. Continental paid only $1,000, its limit on medical coverage.

The amount of premium charged for coverage "may often be relevant in determining the scope of coverage intended by the parties." 13 Appleman, *Insurance Law and Practice* § 7389 (1976). In this case, Stoddard Ranches paid a premium of $243 in 1985, $243 in 1986, and $508 in 1987. Stremick Affidavit, ¶ 9. Taxable wages for its employees were $76,774.80 in 1985, $69,800 in 1986, and $72,546.72 in 1987. Gail Stoddard Deposition at 62. Applying the Wyoming Worker's Compensation Division's premium formula (as contained in the Betty Lou Dunagan affidavit), premiums

owed would have been $1,343.56 in 1985, $1,221.50 in 1986, and $1,269.56 in 1987. The figures are substantially higher than those paid Continental.

### Agency

In their complaint, plaintiffs allege that Continental "is liable for all actions, omissions, and representations of all their agents in conjunction with their negotiation and purchase of insurance coverage by Stoddard Ranches on behalf of its employees including Plaintiff Paul Stoddard and in regard to the handling or adjustment of plaintiffs' claims under the policy at issue." Complaint, ¶ 18. They then allege that Continental is liable "to the extent coverage failed to conform and satisfy the reasonable insurance expectations and needs of plaintiffs[.]" Complaint, ¶ 19. The question presented is whether Ed Ricks acted as the agent of Continental so as to make that company liable for his alleged acts and omissions.

An agent employed by an insurance company to solicit and write insurance in the company acts as the agent of the company. 16 Appleman, *Insurance Law and Practice* § 8726, pp. 339–40 (1981). A broker, on the other hand, is ordinarily "one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company...." *Id.* at 338. Because an insurance broker is primarily the agent of the first person employing him, he is the agent of the insured when he is employed to procure insurance. *Id.* at § 8727, p. 345; 3 Couch, *Cyclopedia of Insurance Law* § 25:95, pp. 448–53. The agency question is one of fact. 16 Appleman, *Insurance Law and Practice* § 8727, p. 341.

Wyoming insurance law reflects these general principles. In *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 32 (Wyo.1983), the court stated as follows:

> The law is clear that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another and through fault or neglect fails to do so, will be held liable for any damage resulting. His liability

arises under the concept that he is agent for the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in causing the issuance of a policy. His liability may arise either for breach of contract or negligent default in the performance of a duty imposed by contract, at the election of his client. [Citations omitted.]

Under this analysis, the court must conclude that Ed Ricks acted as the agent for Stoddard Ranches.

Ed Ricks undertook to procure insurance for Stoddard Ranches. He was that entity's agent in negotiating for a policy. His insurance agency seeks policies from various insurance companies depending on his client's needs. KML Insurance Agency was an independent agency. Ricks Affidavit, ¶ 4.

IT IS ORDERED that defendant's motion for summary judgment is GRANTED.